Bertram D. **WOLFE** et al.

v.

Robert F. **FROEHLKE.**

Civ. A. No. 2277–72.

United States District Court,
District of Columbia.

June 1, 1973.

Melvin L. Wulf, Sanford Jay Rosen, John H. F. Shattuck, American Civil Liberties Union Foundation, New York City, Paul N. Halvonik, Charles Marson, ACLU of Northern California, San Francisco, Cal., Hope Eastman, Washington, D. C., for plaintiffs.

Michael A. Katz, Asst. U. S. Atty., Washington, D. C., for defendant.

### MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

This is an action under the Freedom of Information Act, 5 U.S.C. § 552, seeking disclosure of a Department of Defense file entitled "Forcible Repatriation of Displaced Soviet Citizens—Operation Keelhaul." The file was created in 1946 by Allied Force Headquarters, a post World War II joint British-American command. Plaintiffs are history scholars who seek access to the file for research purposes. The matter is now before the Court on Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment, and Plaintiffs' Cross-Motion for Summary Judgment.

■■ The file sought here has previously been the subject of an unsuccessful lawsuit by one of the present plaintiffs. Epstein v. Resor, 296 F.Supp. 214 (N.D.Cal.1969) aff'd. 421 F.2d 930 (9th Cir. 1970), cert. denied 398 U.S. 965, 90 S.Ct. 2176, 26 L.Ed.2d 549 (1970). For this reason the Defendant has raised a claim of *res judicata* and asks that this case be dismissed. Even assuming that the doctrine would extend to the other plaintiffs here, however, it is clear to the Court that *res judicata* does not apply because changed circumstances have altered the legal issues involved. The doctrine of *res judicata* bars relitigation only of the issues which were raised or might have been raised in the prior case. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The issue in Epstein v. Resor was the validity of a classification for the "Operation Keelhaul" file in the interests of national security as a basis for the claim exemption from disclosure under the Freedom of Information Act. Since that decision the United States Government has determined that it no longer has any objection on the basis of national security to public disclosure of the "Operation Keelhaul" file.[1] A new issue has been raised, however, which Defendant contends still precludes

---

[1]. The "Top Secret" classification of the "Operation Keelhaul" file was downgraded on November 6, 1969, to "Confidential" with the concurrence of the British Government. On October 22, 1970, one of the present Plaintiffs was informed by letter from the Associate Counsel to the President that "the United States Government has absolutely no objection (based on the contents of the files) to the declassification and release of the 'Operation Keelhaul' files." Plaintiff's Exhibit A. The letter went on to deny declassification because British concurrence was not forthcoming.

disclosure. That issue involves foreign policy interests in non-disclosure in light of the fact that the British Government has refused to concur in declassification. The British refusal is based on the fact that they have not yet completed declassifying World War II documents which pre-dated the "Operation Keelhaul" file and refuse to address the question of declassification of the "Keelhaul" file until they complete review of their wartime documents. Whether continued withholding of the "Keelhaul" file is justified in this situation solely in the interests of foreign policy is the central issue here. It was not, and could not have been, litigated in Epstein v. Resor, but is the appropriate subject of the present motions for summary judgment.

■ Defendant relies upon the first exemption to the Freedom of Information Act, 5 U.S.C. § 552(b)(1), to justify its position of non-disclosure in this matter. That exemption provides that the act does not apply to matters that are "specifically required by Executive Order to be kept secret in the interest of the national defense or foreign policy." The affidavit of Major General Bowers, the Adjutant General, establishes that the "Operation Keelhaul" file is held as classified under Executive Order 11652 (3 C.F.R. 375, 1973).[2] Plaintiffs do not dispute the nature of the file nor the fact of classification. The persons delegated authority by the President have determined that unilateral disclosure of the "Operation Keelhaul" file without the concurrence of the British Government would be prejudicial to the foreign relations of the United States. The burden of showing classification pursuant to Executive Order has been met and the Defendant has thus established entitlement to exemption from the Freedom of Information Act. "[T]he test [is] to be simply whether the President has determined by Executive Order that particular documents are to be kept secret." Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (decided January 22, 1973), Slip Opinion at 9.

■ *Mink* is the definitive case to date on the first exemption to the Freedom of Information Act and it clearly holds that absent allegations of fraud or subterfuge the Court is not to look beyond the fact of procedurally proper classification of documents pursuant to Executive Order. Plaintiffs would have the Court look at the substance, or lack of substance, in the reasons for classification offered by the Executive Branch. Yet as this Court reads *Mink* that is precisely what the Supreme Court said was *not* to be done. "Congress chose to follow the Executive's determination in these matters and that choice must be honored." Environmental Protection Agency v. Mink, supra, (at 81,) 93 S.Ct. at 833. The realm of foreign relations is as inappropriate for judicial intervention as is the realm of national security and it is not for this Court to determine what would or would not be prejudicial to our relations with Great Britian in connection with the "Operation Keelhaul" files. In the arcane world of diplomacy a seemingly non-substantive objection,[3] such as that raised here by the British, may be of some undisclosed consequence.

■ Plaintiffs contend that even assuming proper classification under Executive Order 11652, the "Operation Keelhaul" files are now subject to man-

2. The documents were originally classified under Executive Order 10501, which was later amended by Executive Order 10964. Both of these superseded July 1, 1972, by the presently controlling Executive Order 11652. It is settled that the documents were validly classified. Epstein v. Resor, 296 F.Supp. 214 (N.D.Cal.1969) aff'd 421 F.2d 930 (9th Cir. 1970) cert. denied 398 U.S. 965, 90 S.Ct. 2176, 26 L.Ed.2d 549 (1970). The present action relates to declassification only and there is no dispute that Executive Order 11652 controls.

3. Plaintiffs would characterize the reason for nondisclosure here as "solely for the administrative convenience of a foreign government."

datory declassification under the terms of that Order which provide automatic declassification for documents after twenty years. Sec. 5(B)(1). The automatic declassification provision, however, has an exception for materials "furnished by foreign Governments or international organizations." *Id.* Plaintiffs contend that some of the documents in question were undoubtedly produced by American forces in the joint command and that the Government has not sustained its burden of proof as to the foreign origin of any of the documents. Leaving aside the question of who bears the burden of proof as to this issue, it is clear that some of the documents were also undoubtedly the product of British members of the joint force. Debate over which side produced which paper, however, would be senseless. The clear import of the exception for materials "furnished by foreign governments *or international organizations*" is to protect materials in which foreign governments have a valid interest as a result of having originated the materials either independently *or jointly*. This Court views the Allied Force Headquarters as clearly within the import of "international organizations" in this context.

Plaintiff next argues that since the joint command has long terminated, it no longer has any interest to be protected by classification. That, of course, is true, but misses the point that it is not only the interests of the joint command that are to be protected. The interests of the constituent nations are also the legitimate focus of protection. The British have determined that their interests do not favor disclosure at this time and our President has concurred in their wishes.[4] The automatic declassification provision thus does not apply.

Plaintiffs raise an argument that because they seek the files for scholarly research which will contribute to the public knowledge and information they are somehow clothed with First Amendment interests in this case. This Court firmly rejects the effort to imply a Constitutional right to disclosure of Government files. The Government has imposed no restraints on Plaintiffs' freedom to research and publish the results of their investigations. The First Amendment cannot be said to impose an *affirmative* duty on the part of the Government to assist in that research or to disclose Government files. Plaintiffs' interests here are statutory in nature and have been accorded due consideration as such.

Upon the above considerations, and upon consideration of the entire record herein, it is this 1st day of June, 1973.

Ordered, that Plaintiffs' Motion for Summary Judgment be and hereby is denied, and it is

Further ordered, that Defendants Motion for Summary Judgment be and hereby is granted.

4. Plaintiffs contend that Environmental Protection Agency v. Mink, supra, requires only that the President's decision on classification be honored while here it is a decision of the British Government which is being allowed to control disclosure. Here again, however, Plaintiff's characterization of the situation is in error. The President *has determined* through his delegates, that unilateral disclosure would prejudice our foreign policy. It is *that* decision which is controlling.