CONSUMERS UNION OF the UNITED STATES, INC. and Public Citizen's Health Research Group, Appellants,

v.

CONSUMER PRODUCT SAFETY COMMISSION et al.

No. 75–2059.

United States Court of Appeals, District of Columbia Circuit.

Dec. 22, 1978.

---

Alan B. Morrison and Diane B. Cohn, Washington, D. C., for appellants Consumers Union of the U. S. and Public Citizens

Health Research Group, filed a supplemental memorandum.

Leonard Schaitman and Frederic D. Cohen, Attys., Dept. of Justice, Washington, D. C., for appellee Consumer Product Safety Commission, filed a supplemental memorandum.

Harry L. Shniderman and James M. McHaney, Jr., Washington, D. C., for appellees Aeronutronic Ford Corp. and GTE Sylvania, Inc.; Robert W. Steele and Alan M. Grimaldi, Washington, D. C., for appellee General Elec. Co.; Bernard G. Segal, Charles C. Hileman, III, and Deena Jo Schneider, Philadelphia, Pa., for appellee RCA Corp.; J. Wallace Adair, Washington, D. C., for appellee Admiral Corp.; Stephen B. Clarkson, Washington, D. C., for appellees The Magnavox Co. and Zenith Radio Corp.; Nancy L. Buc, Washington, D. C., for appellee Matsushita Elec. Co.; James M. Johnstone, Washington, D. C., for appellee Motorola, Inc.; William L. Dickey, Washington, D. C., for appellee Sharp Electronics Corporation; Lawrence R. Walders, Washington, D. C., for appellee Toshiba-America, Inc.; William F. Patten and D. Clifford Crook, III, Washington, D. C., for appellee Warwick Electronics, Inc.; filed a supplemental memorandum.

Before WRIGHT, Chief Judge, and BAZELON and ROBINSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

At the core of this litigation[1] is appellants' challenge[2] under the Freedom of Information Act (FOIA)[3] to the Consumer Product Safety Commission's failure to disclose data concerning accidents attributable to the operation of television sets. When their cause was first before us, we reversed the District Court's ruling that no case or controversy was presented.[4] That determination had been premised on the Commission's acknowledged willingness to release the data save for a ban imposed thereon by a preliminary injunction awarded television manufacturers by the District Court for the District of Delaware in a reverse-FOIA suit involving the same information.[5] We held that the Delaware action, to which appellants were not parties, was no obstacle to their effort in the District Court here.[6] We reasoned that a preliminary injunction is designed merely to preserve the status quo ante pending final decision, and " 'is not an adjudication of rights in any proper sense of the term . . . .' "[7] Because the Delaware court had entered an order "closing out" the case before any final stage had been reached, we concluded that the Delaware proceeding was not "an insuperable barrier to the suit at bar."[8]

We later were informed that the Delaware action had not really been terminated, but that the "closing out" order was apparently a means merely of placating the periodic call for statistics reflecting judicial efficiency in processing caseloads.[9] In denying rehearing, we noted that appellants had still not been added as parties to the Delaware proceedings, and explained that "[s]ince all necessary parties are before the District Court here, there appears no reason why the litigation should not proceed here,

---

1. Our earlier decisions are cited *infra* notes 4 and 9.

2. Because of the grounds on which our previous decisions rested, it was unnecessary to deal with the problems that are squarely presented now.

3. Pub.L. No. 89–554, 80 Stat. 383 (1966), *as amended*, 5 U.S.C. § 552(a)(3)–(e) (1976).

4. *Consumers Union v. Consumer Prod. Safety Comm'n*, 182 U.S.App.D.C. 351, 561 F.2d 349 (1977).

5. See *id.* at 356, 561 F.2d 354.

6. *Id.* at 359, 561 F.2d at 357.

7. *Id.* at 358, 561 F.2d at 356, quoting *United States Elec. Lighting Co. v. Metropolitan Club*, 6 App.D.C. 536, 544 (1895).

8. 182 U.S.App.D.C. at 358, 561 F.2d at 356.

9. *Consumers Union v. Consumer Prod. Safety Comm'n*, 184 U.S.App.D.C. 146, 147, 565 F.2d 721, 722 (1977).

particularly since this is the venue authorized by the FOIA." [10]

Our prior opinions spurred the manufacturers to renew vigorously their pursuit of a judgment on the merits in Delaware, and appellants made no effort to have the District Court here enjoin them from that course. And the Commission, at long last, moved in the Delaware court for a change of venue to the District of Columbia, but added no alternative motion to join the FOIA requesters in the Delaware case—in which, we are now told, their rights have been fully and finally adjudicated. The Delaware court denied transfer primarily on the ground that, though the Commission faced the possibility of inconsistent outcomes on the merits, "[t]he time for the Commission to have moved for a transfer of these cases was in the early stages of this litigation in 1975 before all the effort and work had been expended here." [11]

█ While a petition to the Supreme Court for a writ of certiorari in this case

was pending, the Delaware court issued a permanent injunction.[12] The Supreme Court subsequently granted certiorari and remanded the case to us "for further consideration in light of the permanent injunction." [13] Thus we are now brought face-to-face with the issue we had earlier reserved: Does a judgment in favor of information-suppliers in a reverse-FOIA suit bar requesters not parties thereto from litigating their contention that the Freedom of Information Act mandates disclosure? [14] The answer, we think, becomes clear once one investigates the interrelationship of the Act and reverse-FOIA suits in light of traditional principles governing preclusion of subsequent litigation.

## I. THE RATIONALES FOR FOIA AND REVERSE–FOIA SUITS

█ Before the Freedom of Information Act was adopted, official dissemination of information was frequently marked by caprice,[15] and suits to obtain information or to forestall its release met with "far from

10. *Id.*

11. *GTE Sylvania, Inc. v. Consumer Prod. Safety Comm'n*, 438 F.Supp. 208, 212 (D.Del.1977). The court noted that "the Commission does not contend that the convenience of the parties and witnesses requires a transfer of these actions to the District of Columbia." *Id.* at 211.

12. *GTE Sylvania, Inc. v. Consumer Prod. Safety Comm'n*, 443 F.Supp. 1152 (D.Del.1977), *appeal pending*, No. 78 1328 (3d Cir.).

13. *GTE Sylvania, Inc. v. Consumers Union*, 434 U.S. 1030, 98 S.Ct. 761, 54 L.Ed.2d 778 (1978).

14. See *Consumers Union v. Consumer Prod. Safety Comm'n*, *supra* note 4, 182 U.S.App. D.C. at 359, 561 F.2d at 357. After the remand, we called upon the parties for, and they submitted, supplemental memoranda setting forth their views as to the course the court should take, addressing particularly the question stated in text.

15. Section 3(c) of the original Administrative Procedure Act, Pub.L. No. 79–404, 60 Stat. 238 (1946), which the Freedom of Information Act replaced, provided that "[s]ave as otherwise required by statute, matters of official record shall in accordance with published rule be made available to persons properly and directly concerned except information held confidential

for good cause found." This section was perceived as "not intended to open up Government files for general inspection," Attorney General's Manual on Administrative Procedure Act 25 (1947), and agency responses to requests for information often evidenced an appreciation of secrecy for secrecy's sake. See S.Rep. No. 813, 89th Cong., 2d Sess. 3–5 (1965); H.R.Rep. No. 1497, 89th Cong., 2d Sess. 5–6 (1966), U.S.Code Cong. & Admin.News 1966, p. 2418; *EPA v. Mink*, 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119, 127–128 (1973); *Getman v. NLRB*, 146 U.S.App.D.C. 209, 217–218, 450 F.2d 670, 678–679, *stay denied*, 404 U.S. 1204, 92 S.Ct. 7, 30 L.Ed.2d 8 (1971); Note, *Comments on Proposed Amendments to Section 3 of the Administrative Procedure Act: The Freedom of Information Bill*, 40 Notre Dame Law. 417, 435–437 (1965). The breadth of agency discretion under § 3(c) was in no way curtailed by the courts, see, *e. g., FCC v. Schreiber*, 381 U.S. 279, 293, 85 S.Ct. 1459, 1469, 14 L.Ed.2d 383, 393 (1965); *cf. Appeal of SEC*, 226 F.2d 501, 517–519 (6th Cir. 1955); but *cf. Graber Mfg. Co. v. Dixon*, 223 F.Supp. 1020 (D.D.C.1963), and that section had little practical effect on prior law. *Cf. United States ex rel. Stowell v. Deming*, 57 App.D.C. 223, 224, 19 F.2d 697, 698, *cert. denied*, 275 U.S. 531, 48 S.Ct. 28, 72 L.Ed. 410 (1927).

uniform"[16] judicial treatment.[17] The Act was intended to rationalize agency disclosure policies[18] by providing a mechanism for balancing the public's "right to know" against the agency's interest in preserving confidentiality.[19] If a court finds that the Act applies to material for which a request has been properly made,[20] that is the end of the matter; the material *must* be disclosed,[21] for the Act effectuates a congres-

sional judgment that in those circumstances no public or private interest in secrecy outweighs the benefits attending public access.[22] Moreover, in determining whether the Act is operative, the legislative command that disclosure be the rule and exemptions be narrowly construed[23] must be sedulously observed. But Congress in the same breath specified classes of information to which the Act—and its policy of openness —"do[ ] not apply."[24] When a court finds

**16.** 1 K. Davis, Administrative Law Treatise § 3.13, at 227 (1958).

**17.** See cases cited *supra* note 15. See also the many cases dealing with the propriety of agency disclosure *sua sponte* or in the course of agency proceedings. *E. g., FCC v. Schreiber, supra* note 15; *Utah Fuel Co. v. National Bituminous Coal Comm'n,* 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483 (1939); *Norwegian Nitrogen Prods. Co. v. United States,* 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933); *FTC v. Menzies,* 145 F.Supp. 164 (D.Md.1956), *aff'd on other grounds,* 242 F.2d 81 (4th Cir.), *cert. denied,* 353 U.S. 957, 77 S.Ct. 863, 1 L.Ed.2d 908 (1957). See generally *Appeal of SEC, supra* note 15, 226 F.2d at 517–519 and cases there cited; J. Chamberlain, N. Dowling & P. Hays, The Judicial Function in Administrative Agencies 112–120 (1942); 1 K. Davis, Administrative Law Treatise § 3.13 (1958 & 1970 Supp.); Rourke, *Law Enforcement Through Publicity,* 24 U.Chi.L.Rev. 225, 242–247 (1957).

**18.** See, *e. g.,* S.Rep. No. 813, *supra* note 15, at 3:

It is the purpose of the present bill . . . to establish a general policy of full agency disclosure unless information is exempted. . . . It is essential that agency personnel, and the courts as well, be given definitive guidelines in setting informational policies.

**19.** *Id.* See also *EPA v. Mink, supra* note 15, 410 U.S. at 79–80, 93 S.Ct. at 832, 35 L.Ed.2d at 127–128.

**20.** When no "request for identifiable records" has been made, the statute is not activated. 5 U.S.C. § 552(a)(3) (1976); see S.Rep. No. 813, *supra* note 15, at 2; *cf., e. g., Nader v. Volpe,* 151 U.S.App.D.C. 90, 93 n.26, 466 F.2d 261, 264 n.26, 18 A.L.R.Fed. 595 (1972); *FTC v. Cinderella Career & Finishing Schools, Inc.,* 131 U.S. App.D.C. 331, 341 n.15, 404 F.2d 1308, 1318 n.15 (1968) (concurring opinion). See also *Westinghouse Elec. Corp. v. United States Nuclear Regulatory Comm'n,* 555 F.2d 82, 93–94 (3d Cir. 1977). But see *Pennzoil Co. v. FPC,* 534 F.2d 627, 630 (5th Cir. 1976); *Continental Oil Co. v. FPC,* 519 F.2d 31, 36 (5th Cir. 1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 794 (1976); *Union Oil Co. v. FPC,* 542 F.2d 1036, 1045 (9th Cir. 1976).

**21.** *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 147–148, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29, 45–46 (1975).

**22.** S.Rep. No. 813, *supra* note 15, at 5–6; see, *e. g., Getman v. NLRB, supra* note 15, 146 U.S. App.D.C. at 217–219, 450 F.2d at 678–680; *Soucie v. David,* 145 U.S.App.D.C. 144, 154, 448 F.2d 1067, 1077 (1971). See also *Department of the Air Force v. Rose,* 425 U.S. 352, 379 n.17, 96 S.Ct. 1592, 1607 n.17, 48 L.Ed.2d 11, 31 n.17 (1976). See generally K. Davis, Administrative Law of the Seventies § 3A.6, at 61 (1976).

**23.** See *Department of the Air Force v. Rose, supra* note 22, 425 U.S. at 361, 96 S.Ct. at 1599–1600, 48 L.Ed.2d at 21, citing *EPA v. Mink, supra* note 15, 410 U.S. at 79, 93 S.Ct. at 832, 35 L.Ed.2d at 127–128; *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 343, 484 F.2d 820, 823 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), *aff'd after remand,* 173 U.S.App.D.C. 187, 193, 523 F.2d 1136, 1142, 28 A.L.R.Fed. 623 (1975); *Soucie v. David, supra* note 22, 145 U.S.App.D.C. at 157, 448 F.2d at 1080.

**24.** 5 U.S.C. § 552(b) (1976); S.Rep. No. 813, *supra* note 15, at 3; see, *e. g., Administrator v. Robertson,* 422 U.S. 255, 261, 95 S.Ct. 2140, 2145, 45 L.Ed.2d 164, 170 (1975); *NLRB v. Sears, Roebuck & Co., supra* note 21, 421 U.S. at 137, 95 S.Ct. at 1510, 44 L.Ed.2d at 39; *DPA v. Mink, supra* note 15, 410 U.S. at 74, 93 S.Ct. at 830, 35 L.Ed.2d at 125. Since the Act is "not a withholding statute but a disclosure statute," S.Rep. No. 813, *supra* note 15, at 5; see S.Rep. No. 584, 93d Cong., 2d Sess. 6 (1974); H.R.Rep. No. 1419, 92d Cong., 2d Sess. 7 (1972), the mere fact that information falls within one of its exemptions does not of itself outlaw disclosure. See *Planning Research Corp. v. FPC,* 181 U.S.App.D.C. 33, 36–37 n.4, 555 F.2d 970, 973–974 n.4 (1977), citing S.Rep. No. 584, *supra,* at 6 and *Charles River Park "A", Inc. v. HUD,* 171 U.S.App.D.C. 286, 293, 519 F.2d 935, 942 (1974) and K. Davis, Administrative Law of the Seventies § 3A.5, at 58–61 (1976) and K. Davis, Administrative Law Treatise § 3A.5, at 122

that requested material falls into one of these categories, and resultantly that its divulgence is not compelled by the Act, the propriety of voluntary disclosure by the agency must hinge on reconciliation with such other law as is pertinent—whether statute, regulation, the administrative "common law" or general principles of equity.[25]

■ Some of these residual legal rules may endow private parties with legally cognizable interests in the confidentiality of exempted information; others may bestow on some a greater entitlement to information than the Act itself gives the general public.[26] Since the agency's purposes will only coincidentally correspond with those of nongovernmental parties, it would be folly to entrust these often-critical private interests [27] to unreviewable bureaucratic discretion. This court has accordingly held that when an agency asserts its intention to comply with a demand for information, parties who would be aggrieved by compliance may sue for a declaration whether that release would be lawful.[28] But such liti-

---

(1970 Supp.); *Chrysler Corp. v. Schlesinger,* 565 F.2d 1172, 1185 (3d Cir. 1977), *cert. granted,* 435 U.S. 914, 98 S.Ct. 1466, 55 L.Ed.2d 504 (1978); *Superior Oil Co. v. FERC,* 563 F.2d 191, 204 (5th Cir. 1977); Clement, *The Rights of Submitters to Prevent Agency Disclosure of Confidential Business Information: The Reverse Freedom of Information Lawsuit,* 55 Texas L.Rev. 587, 598–600 (1977); *cf.* Drachsler, *The Freedom of Information Act and the "Right" of Non-Disclosure,* 28 Ad.L.Rev. 1, 5–6 (1976); Project, *Government Information and the Rights of Citizens,* 73 Mich.L.Rev. 971, 1158–1159 (1975); Comment, *Reverse Freedom of Information Act Suits: Confidential Information in Search of Protection,* 70 Nw.L.Rev. 995, 1010–1011 (1976). See also *Associated Dry Goods Corp. v. EEOC,* 419 F.Supp. 814, 821 (E.D.Va.1976). But *cf. Westinghouse Elec. Corp. v. Schlesinger,* 542 F.2d 1190, 1197 (4th Cir. 1976), *cert. denied,* 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977); *McCoy v. Weinberger,* 386 F.Supp. 504, 508 (W.D.Ky.1974).

**25.** See, *e. g., Planning Research Corp. v. FPC, supra* note 24, 181 U.S.App.D.C. at 36–37 n.5, 555 F.2d at 973–974 n.5, quoting K. Davis, Administrative Law Treatise § 3A.5, at 122 (1970 Supp.); *Charles River Park "A", Inc. v. HUD, supra* note 24, 171 U.S.App.D.C. at 140–141, 519 F.2d at 941–942; *Chrysler Corp. v. Schlesinger, supra* note 24, 565 F.2d at 1192; *Westinghouse Elec. Corp. v. Schlesinger, supra* note 24, 542 F.2d at 1197–1198; *GSA v. Benson,* 415 F.2d 878, 880 (9th Cir. 1969). But *cf. Babcock & Wilcox Co. v. Rumsfeld,* 70 F.R.D. 595, 601 (N.D.Ohio 1976).

**26.** Compare, *e. g., United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) with *EPA v. Mink, supra* note 15, 410 U.S. at 86–88, 93 S.Ct. at 835–836, 35 L.Ed.2d at 131–133.

**27.** At least one reverse-FOIA action has been brought by individuals seeking to prevent disclosure to business concerns of confidential information about them. *Sonderegger v. United States Dep't of Interior,* 424 F.Supp. 847

(D.Idaho 1976) (request of claim files on each victim in Teton Dam disaster). Many other FOIA cases, mostly turning on the scope of 5 U.S.C. § 552(b)(6) (1976), indicate that requesters may desire information about "little people." *E. g., Department of the Air Force v. Rose, supra* note 22, 425 U.S. at 373–376, 96 S.Ct. at 1606–1607, 48 L.Ed.2d at 28–30 (Air Force Academy disciplinary records); *Rural Housing Alliance v. United States Dep't of Agriculture,* 162 U.S.App.D.C. 122, 126, 498 F.2d 73, 77 (1974) ("information regarding marital status, legitimacy of children, identity of fathers . . ., medical condition, welfare payments, alcoholic consumption, family fights, reputation, and so on"). *Ackerly v. Ley,* 137 U.S.App.D.C. 133, 136, 420 F.2d 1336, 1339 (1967) (medical records); *Wine Hobby U.S.A., Inc. v. Internal Revenue Serv.,* 502 F.2d 133, 136–137 (3d Cir. 1974) (names, addresses, family status, and personal activities within the home); *Disabled Officer's Ass'n v. Rumsfeld,* 428 F.Supp.. 454 (D.D.C.1977), *aff'd,* 187 U.S. App.D.C. 425, 574 F.2d 636 (1978) (names and addresses of former military officers who retired with a disability); *Columbia Packing Co., Inc. v. United States Dep't of Agriculture,* 417 F.Supp. 651, 654 (D.Mass.1976), *aff'd,* 563 F.2d 495 (1st Cir. 1977) ("a detailed synopsis of each individual's career within the [government], data about family relationships, financial information and medical records"); *cf. Ditlow v. Schultz,* 170 U.S.App.D.C. 352, 517 F.2d 166 (1975). Surely these individuals should not be without recourse to judicial review of agency action so deeply affecting their privacy. See generally, Hulett, *Privacy and the Freedom of Information Act,* 27 Ad.L.Rev. 275 (1975); Project, *supra* note 24, 73 Mich.L.Rev. at 1161 1162, 1336 1338.

**28.** *Charles River Park "A", Inc. v. HUD, supra* note 24, 171 U.S.App.D.C. at 141, 519 F.2d at 942; see *Planning Research Corp. v. FPC, supra* note 24, 181 U.S.App.D.C. at 40 41, 555 F.2d at 977 978. See also *Sears, Roebuck & Co. v. GSA,* 180 U.S.App.D.C. 202, 204 205, 553 F.2d 1378, 1380 1381 (1977).

gants must first pass through the needle's eye of the Freedom of Information Act,[29] for if the Act calls for disclosure they have, of course, no right whatsoever to confidentiality.[30] Only if the Act does not govern need the court examine other sources of law—which may prohibit dissemination, give the agency judicially reviewable or unreviewable discretion to release or retain, or even mandate disclosure, depending on the circumstances.[31]

■ Reverse-FOIA suits therefore are no blight upon the landscape of the law, but the propriety of their role in any scenario must be carefully considered. Enforcement of such rights of confidentiality as federal law might otherwise recognize must not be allowed to choke the free flow of data contemplated by Congress in the Freedom of Information Act. Surely such an obstruction would in interposed if a judgment adverse to the agency in a reverse-FOIA action were permitted to bar later FOIA suits for the documents in question when no one interested in obtaining the material was a party to the earlier litigation. In our view, no such preemption is warranted, as this case tellingly exemplifies.

## II. THEORIES FOR PRECLUSION OF SUBSEQUENT FOIA SUITS

Federal courts in different jurisdictions may sometimes reach conflicting conclusions on the duties of an administrative agency, but normally without placing it in an impossible dilemma or bringing on a direct clash of judicial power. A serious conundrum, however, arises when, as here, the subject matter is information and the dispute is over whether it should be disclosed to the public. Once released pursuant to judicial decree, the data cannot be bottled up within the court's geographical area; with modern communications, information made public at any one point may soon be available throughout the country, often within moments. By the same token, when a court orders an agency to retain information, its edict is absolutely useless unless it stops agency action everywhere. Consequently, the first court to decide—in either a FOIA or a reverse-FOIA suit—will have pronounced a judgment that might reach across the Nation, or, on the other hand, might not have any practical effect even in its own jurisdictional domain.

That is exactly the situation here: The Delaware proceeding began, and the Commission was temporarily enjoined, before the appellant-requesters filed their own action in the District of Columbia seeking disclosure. By the time appellants sued, the District Court here knew that should the litigation before it continue, a decision contrary to that of the Delaware court might be reached, and that the Commission could not possibly comply with each of the conflicting orders.

Thus focused, the issue is the proper response of the court chronologically second. We earlier rejected one solution—dismissal for absence of a case or controversy—and we adhere to that position [32] for the reasons then stated.[33] That still leaves other alter-

---

**29.** *Sears, Roebuck & Co. v. GSA, supra* note 28, 180 U.S.App.D.C. at 205, 553 F.2d at 1381, citing *Charles River Park "A", Inc. v. HUD, supra* note 24, 171 U.S.App.D.C. at 291–292 n.4, 294 n.10, 519 F.2d at 940 n.4, 941 n.10 and *Westinghouse Elec. Corp. v. Schlesinger, supra* note 24, 542 F.2d at 1208 n.57.

**30.** See note 22 *supra.*

**31.** See cases cited *supra* note 23; *GSA v. Benson, supra* note 25, 415 F.2d at 880, (alternative holding that agency is bound by regulation specifying that even if requested material is exempt, it should be released absent a compelling reason for nondisclosure); *cf.* S.Rep. No. 584, *supra* note 24, at 6; H.R.Rep. No. 1419,

*supra* note 24, at 7 (approving regulations similar to those invoked in *Benson* ); Drachsler, *supra* note 24, 28 Ad.L.Rev. at 2, 9–11.

**32.** See *Consumers Union of the United States, Inc. v. Consumer Prod. Safety Comm'n, supra* note 4, 182 U.S.App.D.C. at 356–357, 561 F.2d at 354–355.

**33.** In the Supreme Court, the Commission stated, contrary to its argument here, that it had become "persuaded . . . that a case or controversy, within the meaning of Article III, exists between the requesters and the Commission." Brief for Federal Respondents in Opposition to Petition for a Writ of Certiorari, at 5,

natives—dismissal on a theory of stare decisis, collateral estoppel or comity, or continuation of the suit in some manner. For more than ample reason, we have chosen the latter course.

## A. Stare Decisis

We surely do not gainsay that "the doctrine of stare decisis is still a powerful force in our jurisprudence." [34] So, a court resolving a FOIA claim may choose to defer to a previous judicial decision that the Act does or does not apply to particular documents,[35] whether the prior action sought disclosure or restraint. It has not, however, been our experience that federal judges are either careless or timorous. The notion that any would defer on stare decisis grounds to a decision by a co-ordinate court with which he disagreed is unworthy of comment.[36]

## B. Collateral Estoppel

■ Furthermore, the doctrine of collateral estoppel, which does bind parties to a previous suit to such determinations of material issues as are encompassed in the judgment,[37] only rarely precludes nonparties from litigating the same issues afresh.[38] If the FOIA applicant has neither been a party nor otherwise represented in a prior successful reverse-FOIA suit, he will not be blocked from taking his controversy to the courts.[39]

■ The only parties here who were litigants in Delaware are the Consumer Product Safety Commission and the manufacturers who sought to prevent disclosure of materials that the Commission was prepared to turn over to appellants. An agency's interests in FOIA suits of either stripe diverge markedly from private interests,[40]

GTE Sylvania, Inc. v. Consumers Union, supra note 13.

**34.** United States v. Maine, 420 U.S. 515, 527, 95 S.Ct. 1155, 1161, 43 L.Ed.2d 363, 371 (1975).

**35.** See generally, Vestal, Relitigation by Federal Agencies: Conflict, Concurrence and Synthesis of Judicial Policies, 55 N.C.L.Rev. 123 (1977). But cf. Robertson v. Department of Defense, 402 F.Supp. 1342, 1346–1347 (D.D.C.1975).

**36.** See City Stores Co. v. Lerner Shops of District of Columbia, Inc., 133 U.S.App.D.C. 311, 315, 410 F.2d 1010, 1014 (1969) ("[d]ecisions of district courts and other courts of appeal are, of course, not binding on us and are looked to only for their persuasive effect"; "[i]f they fail to persuade by the use of sound and logical reasoning, they will not be followed, no matter how great their number"); Watson v. Allen, 103 U.S.App.D.C. 5, 10, 254 F.2d 342, 347 (1958), later appeal, 107 U.S.App.D.C. 25, 274 F.2d 87 (1959), (decisions of other courts of appeals "are persuasive and entitled to deference, but are not authoritatively binding"). See generally, Vestal, supra note 35, 55 N.C.L. Rev. at 130–136. But see Comment, Securing Uniformity in National Law: A Proposal for National Stare Decisis in the Courts of Appeals, 85 Yale L.J. 1219 (1978).

**37.** See, e. g., Nixon v. Richey, 168 U.S.App.D.C. 172, 180 n.75, 513 F.2d 430, 438 n.75 (1975), and cases cited therein; Wolfe v. Froehlke, 358 F.Supp. 1318, 1319 (D.D.C.1973), aff'd, 166 U.S. App.D.C. 274, 510 F.2d 654 (1974). See generally, Vestal, Preclusion/Res Judicata Variables: Parties, 50 Iowa L.Rev. 27 (1964).

**38.** See, e. g., Sea-Land Servs., Inc. v. Gaudet, 414 U.S. 573, 593–595, 94 S.Ct. 806, 819, 39 L.Ed.2d 9, 25–26 (1974), citing, inter alia, Blonder-Tongue Laboratories, Inc. v. University of Ill. Foundation, 402 U.S. 313, 320–327, 91 S.Ct. 1434, 1439–1442, 28 L.Ed.2d 788, 795–799 (1971); Vestal, supra note 37, 50 Iowa L.Rev. at 63–64; Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 855–856 (1952). See also Hansberry v. Lee, 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22, 26 (1940). We are cognizant of isolated decisions of lower federal courts advancing bold new rules for preclusion of nonparties, which have been hailed by commentators as a sign of things to come. See generally McCoid, A Single Package for Multiparty Disputes, 28 Stan.L.Rev. 707 (1976); Vestal, Res Judicata/Preclusion: Expansion, 47 S.Calif.L.Rev. 357 (1974); Vestal, Claim Preclusion and Parties in Privity: Sea-Land Services v. Gaudet in Perspective, 60 Iowa L.Rev. 973 (1975). We take no view on these developments, for they do not apply to the situation under discussion here, in which by no means did appellants have a "vicarious day in court." Note, Collateral Estoppel of Nonparties, 87 Harv.L.Rev. 1485, 1500 (1974).

**39.** See Wolfe v. Froehlke, supra note 37, 358 F.Supp. at 1319; Robertson v. Department of Defense, supra note 35, 402 F.Supp. at 1346–1347.

**40.** As an institutional matter, the agency's policy goals will best be served if it is completely free to expend or conserve the power of its knowledge. See, e. g., Rourke, supra note 17, 24 U.Chi.L.Rev. 231–233. One commentator

and raise serious doubt whether the agency could ever be deemed to represent members of the public. Indeed, congressional appreciation of that divergence underlies the Act. The institutional predilections that distinguish the agency's position from the citizens argue against permitting the Commission to do via litigation what it may not do by agreement [41]—to bar applicants from information to which the Act mandates access. Far less do they justify departure from the rule, articulated in the milieu of antitrust enforcement, that "just as the Government is not bound by . . . litigation to which it is a stranger, so private parties, similarly situated, are not bound by government litigation." [42]

Nor can the agency's role in reverse-FOIA litigation be likened to that of the named representative of a class in a defendant class action, and thus raise the spectre that a judgment against the agency would extend to bind all putative members of the hypothetical class it supposedly represents. At the outset, the clash of purposes would render the bureaucracy suspect as a representative of any class composed of FOIA requesters. [43] Even passing that, when—as in the present circumstances—no class has been convened, no preclusive effect can possibly follow, and the public's right to know remains secure.

### C. *Comity*

▇▇▇▇ That brings us lastly to comity, here reflected in the principle that "[o]rdinarily, the court first acquiring jurisdiction of a controversy should be allowed to proceed with it without interference from other courts under suits subsequently instituted." [44] Though we have not the smallest quarrel with that time-honored dogma, it should not be permitted to hold sway outside situations in which it was designed to

has noted that "[i]t may be bad for appearances in a period of 'openness' and 'honesty' for an agency to refuse disclosure. . . ." O'Reilly, *Government Disclosure of Private Secrets Under the Freedom of Information Act*, 30 Bus.Law. 1125, 1134 (1975); accord, Note, *Protection from Government Disclosure—The Reverse FOIA Suit*, 1976 Duke L.J. 330, 359 (1976), *cf.* Comment, *supra* note 24, 70 Nw.U.L. Rev. at 998–999. On the other hand, self-interest may often move the agency to keep secret information that, if revealed, would embarrass it or frustrate its regulatory objectives. See S.Rep. No. 813, *supra* note 15, at 3; H.R.Rep. No. 1497, *supra* note 15, at 5–6.

**41.** *Petkas v. Staats,* 163 U.S.App.D.C. 327, 329, 501 F.2d 887, 889 (1974).

**42.** *Sam Fox Publishing Co. v. United States,* 366 U.S. 683, 690, 81 S.Ct. 1309, 1313, 6 L.Ed.2d 604, 610 (1961); see *Battle v. Liberty Nat'l Life Ins. Co.,* 493 F.2d 39, 52 (5th Cir. 1974), *cert. denied,* 419 U.S. 1110, 95 S.Ct. 784, 42 L.Ed.2d 807 (1975); *Robertson v. Department of Defense, supra* note 35, 402 F.Supp. at 1346–1347; *cf. City of Chicago v. General Motors Corp.,* 332 F.Supp. 285 (W.D.Ill.1971), *aff'd,* 467 F.2d 1262 (1972). But *cf. Proctor & Gamble Co. v. Byers Transp. Co., Inc.,* 355 F.Supp. 547, 558 n.18 (W.D.Mo.1973).

We have no quarrel with the proposition that in appropriate circumstances the Government may represent private parties in a judicial proceeding and that that suffices to bar those represented from collaterally attacking the resulting judgment. See *Southwest Airlines Co.*

*v. Texas Int'l Airlines,* 546 F.2d 84, 91–101 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977); Restatement (Second), of Judgments, § 85, comment *d* at 61–62 (Tent. Draft No. 2, 1975). But to accept a governmental agency as an adequate representative of requesting parties whenever the agency nominally favors disclosure is to ignore the stark fact that their interests are not congruent: the agency is concerned with conserving the time and energy of its personnel, and with avoiding establishment of a precedent that in the future might support mandatory divulgence of information it would prefer to keep confidential; the requesters simply want the information. See also note 40 *supra.*

**43.** To view the Commission as litigant of the requesters' rights in their stead "is to attribute to [it] a power that it cannot be said that [it] has assumed to exercise, and a responsibility which, in view of [its] interests[,] it does not appear that [it] could rightly discharge." *Hansberry v. Lee, supra* note 38, 311 U.S. at 46, 61 S.Ct. at 120, 85 L.Ed. at 29. "Such a selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires." *Id.* at 45, 61 S.Ct. at 119–120, 85 L.Ed. at 29.

**44.** *Carbide & Carbon Chem. Corp. v. United States Indus. Chem. Co.,* 140 F.2d 47, 49 (4th Cir. 1944).

apply. Created to assure judicial efficiency and to reflect abiding respect for other courts,[45] the doctrine surely does not contemplate that fundamental rights of citizens will be adjudicated in forums from which they are absent.

■ In fact, though perhaps subconsciously at times, the courts have not allowed comity to be debased in such a fashion. The decisions invoking the principle involve circumstances in which the plaintiff in the later federal suit was a party to the earlier action involving the same issues and subject matter.[46] When everyone with an interest could have had his claim resolved in one court, it would be senseless to allow some of the parties to initiate concurrent litigation over the same dispute. But that is not this case. Some—at least appellants—with a stake in the controversy were not before the Delaware court, and accordingly the principle of comity is inapplicable.[47] Even if comity might be thought at

all relevant, it would not outweigh the nonparties' right, guaranteed by the Act[48] and the Constitution,[49] to have their claims adjudicated.

## III. ACCOMMODATING FOIA AND REVERSE–FOIA SUITS

■ The sum of the foregoing is that none of the familiar anti-relitigation doctrines operates to deprive nonparty requesters of their right to sue for enforcement of the Freedom of Information Act; rather, they remain unaffected by prior litigation solely between the submitters and the involved agency. One obvious consequence is that federal agencies that are prey to reverse-FOIA suits may by that token find themselves subject to the possibility of inconsistent judgments. Threats of that nature are not unprecedented, however, and there are procedural devices aplenty designed to avoid the hazard of conflicting obligations.[50] Resort to them in the present

45. See *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483, 498 (1976); *Columbia Plaza Corp. v. Security Nat'l Bank*, 173 U.S.App.D.C. 403, 409, 525 F.2d 620, 626 (1975).

46. *E. g., Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 181, 72 S.Ct. 219, 220, 96 L.Ed. 200, 202 (1952) (parties to subsequent suit were both involved in first action); *Columbia Plaza Corp. v. Security Nat'l Bank*, 173 U.S.App.D.C. 403, 411, 525 F.2d 620, 628 (1975) (all parties to subsequent suit were involved in first action); *Hilton Hotels Corp. v. Weaver*, 117 U.S.App.D.C. 83, 325 F.2d 1010 (1963), *cert. denied*, 376 U.S. 951, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964) (same plaintiff in both suits; substantially the same parties altogether); *Food Fair Stores, Inc. v. Square Deal Market Co.*, 88 U.S.App.D.C. 176, 177, 187 F.2d 219, 220 (1951) (same parties and issues); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202–1203 (2d Cir. 1970) (same parties and issues); *Cresta Blanca Wine Co. v. Eastern Wine Corp.*, 143 F.2d 1012, 1014 (2d Cir. 1944) (second suit by defendant in prior proceeding against plaintiffs in that first action must be enjoined, but suit on same issue and subject matter against corporation that was not party to first suit must be allowed to continue); *Carbide & Carbon Chem. Corp. v. United States Indus. Chem. Co.*, *supra* note 44, 140 F.2d at 49 (same parties in both suits); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 405 (5th Cir. 1971) (defendants in first suit brought subsequent

action); *Martin v. Graybar Elec. Co.*, 266 F.2d 202, 204 (7th Cir. 1959) (both suits involved the same parties and issues); *American Chem. Paint Co. v. Thompson Chem. Corp.*, 244 F.2d 64, 65–66 (9th Cir. 1957) (same plaintiffs in all suits); *O'Hare Internat'l Bank v. Lambert*, 459 F.2d 328, 330 (10th Cir. 1972) (identical actions brought by same party). See also, *e. g., Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 657, 98 S.Ct. 2552, 2555, 57 L.Ed.2d 504, 508 (1978) (same parties and issue in state and federal court suits); *Colorado River Water Conservation Dist. v. United States, supra* note 45, 424 U.S. at 806, 96 S.Ct. at 1240–1241, 47 L.Ed.2d at 491 (same); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494–495, 62 S.Ct. 1173, 1175–1176, 86 L.Ed. 1620, 1625 (1942) (same); *Rickey Land & Cattle Co. v. Miller & Lux*, 218 U.S. 258, 263, 31 S.Ct. 11, 13–14, 54 L.Ed. 1032, 1038–1039 (1910) (plaintiff in subsequent state suit was a corporation utilized merely as a device by defendant in first federal suit).

47. *Robertson v. Department of Defense, supra* note 35, 402 F.Supp. at 1346, citing *Great N. Ry. Co. v. National R.R. Adjustment Bd.*, 422 F.2d 1187, 1193 (7th Cir. 1970).

48. See 5 U.S.C. § 552(a)(4)(B) (1976).

49. See text *infra* at notes 60–61.

50. See, *e. g., Metropolitan Life Ins. Co. v. Usery*, 426 F.Supp. 150, 155 (D.D.C.1976) (transfer and consolidation of FOIA and re-

context, moreover, would have brought about representation of all interests before the court that first addressed the merits, and thereby would have eliminated the problem completely.

Another consequence is that reverse-FOIA plaintiffs may find that, to prevent judgments in their favor from becoming nugatory, they must join in their lawsuits anyone whose request for information quickened the submitter's controversy with the agency [51]—or perhaps even, by way of a defendant class action, all those who likely may subsequently make such requests. That, too, can only be salutary, for it will assure that the public's interest will be represented by at least one of its own. It will also relieve courts of the temptation—to which we earlier succumbed—to undertake a critique of the agency's litigative strategy.[52]

■ The manufacturer-plaintiffs could have named appellant-requesters as defendants in the Delaware lawsuit, or they could have maintained it as a defendant class action against the Commission and all possible requesters.[53] They did not. The Commission, with some creativity, could have filed an interpleader counterclaim and

joined the requesters on the theory that otherwise the Commission might be exposed to multiple accountability and that, in a dispute over disclosure, information is an indivisible res over which the parties contest.[54] It did not. At the very least, the Commission could have urged that the requesters were parties whose joinder was required under Civil Rule 19.[55] But no consideration was given to the mandates of that rule,[56] though, as we now elucidate, its applicability could hardly have been questioned.

■ If, as the manufacturers and the Commission assert, the Delaware reverse-FOIA suit so affected appellants' interest in disclosure of the information sought that they are now barred from litigating it in the District Court here, the Delaware action certainly could have been said, in the words of Rule 19, "as a practical matter [to] impede [their] ability to protect that interest or . . . [to] leave [the agency] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [appellants'] claimed interest."[57] Indeed, the concept of joinder was created to resolve the problem of conflicting exercise of equity jurisdiction.[58]

verse-FOIA suits); *Fisher v. Renegotiation Bd.*, 355 F.Supp. 1171 (D.D.C.1973) (reverse-FOIA advocate permitted to intervene as of right in FOIA suit). See also text *infra* at notes 53–56.

51. Joining the requester may constrain the reverse-FOIA plaintiff's choice of venue. See 28 U.S.C.A. § 1391(e) (1977 Supp.). See also 5 U.S.C. § 552(a)(4)(B) (1976), discussed in notes 66 and 71 *infra*.

52. See *Consumers Union v. Consumer Prod. Safety Comm'n, supra* note 4, 182 U.S.App. D.C. at 356–357, 561 F.2d at 354–355.

53. See *United States v. Trucking Employers, Inc.*, 75 F.R.D. 682, 686–687 (D.D.C.1977); Fed. R.Civ.P. 23(a) ("[o]ne or more members of a class may sue or be sued as representative parties on behalf of all" if certain prerequisites are met). See generally Wolfson, *Defendant Class Actions*, 38 Ohio St.L.J. 459 (1977); Note, *Defendant Class Actions*, 91 Harv.L.Rev. 630 (1978).

54. See Fed.R.Civ.P. 22; Advisory Committee's Note to Fed.R.Civ.P. 19, reprinted in 39 F.R.D. 89, 92 (1966); *cf. Gauss v. Kirk*, 91 U.S.App. D.C. 80, 83, 198 F.2d 83, 86 (1952).

55. Fed.R.Civ.P. 19.

56. Indeed, though any court may—and should, if justified—examine the issue of Rule 19 *sua sponte*, the Commission refused to consent to the filing of the requesters' amicus brief raising the question on the appeal to the Third Circuit of the Delaware court's ruling. See note 12 *supra*. The Third Circuit granted leave to file the brief, however.

57. Fed.R.Civ.P. 19(a). The possible difficulty that reverse-FOIA plaintiffs might not know the identities of all present or future requesters can be ameliorated by joining any known requesters as representatives of a defendant class. See note 53 *supra*.

58. See *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 120, 88 S.Ct. 733, 743–744, 19 L.Ed.2d 936, 950–951 (1968). Rule 19 also helps "to make it perfectly certain that no injustice is done, either to the parties before it, or to others who are interested in the subject matter, by a decree which might otherwise be granted upon a partial view only of the real merits." *Minnesota v. Northern Sec. Co.*, 184

Rule 19(b) states the considerations that must guide a determination whether one described by Rule 19(a) must be regarded as so indispensable that the litigation must be dismissed. Those factors include

first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

In our view, those factors, had anyone in the Delaware action paused to look at them, surely demanded dismissal of the manufacturers' Delaware suit, or at least an injunction shaped to impact to the smallest possible extent upon the absent requesters' interest.

█ Joinder of the requesters would have been the better course, for it would have avoided the duplicative litigation in which we now are unfortunately entangled, but it was not the only solution. A well-crafted judgment in Delaware could have steered clear of any embarrassment to appellants' claim. Indeed, the inherent ten-sion between reverse-FOIA and FOIA suits could often be mitigated by a rule that, unless the party resisting disclosure joins in his reverse-FOIA suit those seeking release, any injunction therein must be drafted to halt only voluntary disclosure by the agency, and to leave unaffected the requesters' right to seek a subsequent judicial determination that the Act mandates disclosure.[59]

## IV. CONCLUSION

█ Appellant requesters were not made parties to the Delaware action, and the effect of that omission on this litigation is, to us, indisputable. A judgment cannot bind those who were not before the court either in person or through some sort of representative.[60] As the Supreme Court has declared, in dealing with situations where "a final decision cannot be made between the parties litigant without directly affecting and prejudicing the rights of others not made parties . . ., no Court can adjudicate directly upon a person's right, without the party being either actually or constructively before the Court."[61] This basic tenet of due process can hardly be circumvented through the ritualistic invocation of "comity." The manufacturers have no valid objection to relitigation of disclosure of this information, "for clearly the plaintiff [in the earlier suit], who himself chose both the forum and

U.S. 199, 235, 22 S.Ct. 308, 322, 46 L.Ed. 499, 516 (1902).

**59.** See *Provident Tradesmens Bank & Trust Co. v. Patterson, supra* note 58, 390 U.S. at 112 n.10, 88 S.Ct. at 739 n.10, 19 L.Ed.2d at 946 n.10 (the pertinent questions are " '[c]an the decree be written so as to protect the legitimate interests of outsiders and, if so, would such a decree be adequate to the plaintiff's needs and an efficient use of judicial machinery' "). We need not reach the question whether by similar reasoning requesters must always join submitters as defendants in their FOIA suits, for appellants here have done so in their complaint.

**60.** *Hansberry v. Lee, supra* note 38, 311 U.S. at 40–41, 45, 61 S.Ct. at 117–118, 119–120, 85 L.Ed. at 26–27, 29; see *Provident Tradesmens Bank & Trust Co. v. Patterson, supra* note 58, 390 U.S. at 110, 88 S.Ct. at 738, 19 L.Ed.2d at 945 ("[o]f course, since the outsider is not before the court, he cannot be bound by the judgment rendered"); *Kerotest Mfg. Co. v. C–*

*O–Two Fire Equip. Co., supra* note 46, 342 U.S. at 186, 72 S.Ct. at 222, 96 L.Ed. at 204 ("[i]f the patentee's suit against a customer is brought in a district where the manufacturer cannot be joined as a defendant, the manufacturer may be permitted simultaneously to prosecute a declaratory action against the patentee elsewhere").

**61.** *Mallow v. Hinde*, 25 U.S. (12 Wheat.) 193, 198, 6 L.Ed. 599, 600 (1827), quoted with approval in *Provident Tradesmens Bank & Trust Co. v. Patterson, supra* note 58, 390 U.S. at 122, 88 S.Ct. at 744, 19 L.Ed.2d at 952. See also *Western Union Tel. Co. v. Pennsylvania*, 368 U.S. 71, 74–75, 82 S.Ct. 199, 201, 7 L.Ed.2d 139, 142–143 (1961) (forced relinquishment of property interest without assurance that holder will not be held liable again to another in another court violates due process, "and, of course, New York's claims could not be cut off where New York was not heard as a party").

the parties defendant, will not be heard to complain about the sufficiency of the relief obtain[ed] against them."[62] Nor can the Commission legitimately bemoan the threat of inconsistent obligations since it never attempted to foreclose that possibility by seeking the joinder of appellants in Delaware.[63]

The only factor even remotely capable of preventing appellants from prosecuting their FOIA suit toward a result contrary to the broad Delaware reverse-FOIA injunction is their failure to intervene in the proceeding there.[64] We believe, however,

that appellants, and perhaps information-requesters generally, should not suffer from bypasses of this sort. To decide otherwise would force them to accept the choice of a forum possibly sympathetic to the submitter and surely inconvenient or impossible for the requester.[65] Congress specified the sites proper for judicial consideration of FOIA claims;[66] to allow submitters to force FOIA litigation[67] to occur in other arenas would free the tail to wag the dog.[68]

■ This, in our opinion, is the type of "undue hardship" expressly discountenanced by the Advisory Committee when it

---

62. *Provident Tradesmens Bank & Trust Co. v. Patterson, supra* note 58, 390 U.S. at 111, 88 S.Ct. at 739, 19 L.Ed.2d at 946; see *Boles v. Greenville Housing Auth.*, 468 F.2d 476, 479 (6th Cir. 1972) ("[a]ny hardship suffered . . . is attributable to their own failure to bring [an interested person] into the case as a party"). It is no answer to say that a plaintiff normally is allowed to choose how to write his complaint:

> The plaintiff has the right to "control" his own litigation and to choose his own forum. This "right" is, however, like all other rights, "defined" by the rights of others. Thus the defendant has the right to be safe from needless multiple litigation and from incurring avoidable inconsistent obligations. Likewise the interests of the outsider who cannot be joined must be considered. Finally there is the public interest and the interest the court has in seeing that insofar as possible the litigation will be both effective and expeditious. .

*Schutten v. Shell Oil Co.*, 421 F.2d 869, 873 (5th Cir. 1970).

63. See *Provident Tradesmens Bank & Trust Co. v. Patterson, supra* note 58, 390 U.S. at 110, 88 S.Ct. at 738, 19 L.Ed.2d at 945 ("[a]fter trial, however, if the defendant has failed to assert this interest [against inconsistent relief], it is quite proper to consider it foreclosed"). Had the Commission raised the issue in a timely fashion, the Delaware court expectably would either have ordered joinder, modified the relief ultimately granted or dismissed the action. The Supreme Court has instructed that if "[a]mong the unpleasant possibilities entailed by proceeding [is] the likelihood that the defendant might find itself subject to directly conflicting injunctive orders. . . . 'the court must refuse to exercise jurisdiction . . . or become the instrument of injustice.'" *Id.* at 123, 88 S.Ct. at 745, 19 L.Ed.2d at 952, quoting *Northern Ind. R.R. Co. v. Michigan Cent. R.R. Co.*, 56 U.S. (15 How.) 233, 246, 14 L.Ed. 674, 681 (1854).

64. See *Provident Tradesmens Bank & Trust Co. v. Patterson, supra* note 58, 390 U.S. at 114, 88 S.Ct. at 740, 19 L.Ed.2d at 947–948 (reversing this question). Compare *Developments in the Law—Multiparty Litigation in Federal Courts*, 71 Harv.L.Rev. 874, 882–883 (1958) with *id.* at 884–885. Preclusion based on the failure to intervene would be proper, if at all, only where the putative intervenor had timely notice of the litigation.

65. For example, in *Westinghouse Elec. Corp. v. Schlesinger, supra* note 24, one requesting party was the Legal Aid Society of Alameda County, California, but the reverse-FOIA suit was litigated in Virginia, where the requester felt it necessary to intervene. The inconvenience of cross-country intervention is magnified by the familiar rule that "an intervenor generally is held to have waived his privilege to change the venue of a suit." *Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D.Ill.1976), citing *TWA v. CAB*, 339 F.2d 56, 64 (2d Cir. 1964), cert. denied, 382 U.S. 842, 86 S.Ct. 40, 15 L.Ed.2d 82 (1965) and 3B. Moore's Federal Practice § 24.19 (2d ed. 1975).

66. The Freedom of Information Act specifies "the district court of the United States in the district in which the complainant [requester] resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia" as the courts in which enforcement of the Act can properly be sought. 5 U.S.C. § 552(a)(4)(B) (1976).

67. As noted earlier, notes 29–30 *supra* and accompanying text, a court analyzing the merits of reverse-FOIA litigation must surely determine the applicability of the disclosure demands of the Act.

68. *Cf. State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 535, 87 S.Ct. 1199, 1206, 18 L.Ed.2d 270, 278 (1967).

discussed amended Rule 19 in 1966.[69] The rule puts the burden on existing parties and the court to bring in those whose presence is necessary or desirable, and to work out a fair solution when joinder is jurisdictionally impossible.[70] A generally applicable theory of waiver by one who declines to voluntarily step into the proceeding would abrogate the rule and its purpose completely. It is the party's—not the nonparty's—responsibility to make certain that the court has before it all those needed to enable it to serve the ends of justice. And if the essential nonparty cannot, for reasons of personal jurisdiction, be joined in the suit, then the litigation must proceed elsewhere, if at all.[71]

This case, therefore, must finally continue toward a decision on the merits in the District Court for the District of Columbia. Its first task is to analyze closely the Delaware court's reasoning, for it may turn out that the court here will agree with the Delaware court. Should, however, the court decide that the failure to release the information was indeed improper, it will have to ascertain the relief appropriate in the circumstances. Since the manufacturers are party-defendants, it might consider enjoining them from enforcing their Delaware judgment against the Commission.[72] In short, our decision is a narrow one—that this litigation is not prohibited by the earlier action—and we have not attempted to decide whether or not actual disclosure should be the final result.

*Remanded.*

---

**69.** Advisory Committee's Note to Fed.R.Civ.P. 19, reprinted in 39 F.R.D. 89, 92 (1966).

**70.** See *Ricci v. State Bd. of Law Examiners*, 569 F.2d 782, 784 (3d Cir. 1978); Fed.R.Civ.P. 19(a).

**71.** Congress specified that the applicability of the Freedom of Information Act be litigated in the requester's district or in other designated areas, but made no provision at all for venue in the submitter's "home court." See note 66 *supra*.

**72.** Compare *Steelman v. All Continent Corp.*, 301 U.S. 278, 291, 57 S.Ct. 705, 710–711, 81 L.Ed. 1085, 1093 (1937) with *Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir.), *cert. denied*, 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 77 (1964).