Marilyn M. FISHER et al., Plaintiffs,

v.

The RENEGOTIATION BOARD, Defendant,

and

Chromalloy American Corporation, Intervenor Defendant.

Civ. A. No. 342–70.

United States District Court, District of Columbia.

March 16, 1973.

Margaret Gates and Joseph A. Page, Washington, D. C., for plaintiffs.

Harold H. Titus, Jr., U. S. Atty., Arnold T. Aikens and Michael J. Ryan, Asst. U. S. Attys., Washington, D. C., for defendant.

Neil D. Naiden, Washington, D. C., for intervenor-defendant.

## OPINION

CURRAN, District Judge.

This case is before the District Court on remand [1] from the United States Court of Appeals for the District of Columbia Circuit to determine, after an *in camera* inspection, if certain documents which The Renegotiation Board has withheld from the public are exempt from disclosure under the Freedom of Information Act.[2]

---

1. Fisher et al. v. The Renegotiation Board, D.C.Cir., Nov. 10, 1972, 473 F.2d 109.

2. 5 U.S.C. § 552 (1970).

Plaintiffs, who when they initiated this action were students at Georgetown University Law Center, sought disclosure from The Renegotiation Board of three categories of documents regarding eight named corporations that have entered into national defense contracts with certain departments or agencies of the United States Government. Since the Board substantially denied the plaintiffs' request, plaintiffs sought to compel disclosure in the District Court, which thereupon granted the Board's motion for summary judgment.

Subsequent to the release of the opinion of the United States Court of Appeals, the Chromalloy American Corporation moved this court for permission to intervene as of right under Federal Rules of Civil Procedure 24(a)(2) and (3), averring that it was one of the eight corporations whose papers are the subject of the plaintiffs' request and that it would be adversely affected if the exempt status of the information which it was required to file with the Board were not preserved. Permission to intervene was granted.

In accordance with a stipulation entered into by the plaintiffs, defendant and intervenor, sample copies of the documents were submitted to this court for *in camera* inspection.

The Renegotiation Board is charged with the responsibility of eliminating excess profits earned on contracts between national defense contractors and the United States. Those holding contracts are required to submit to the Board forms detailing receipts, accruals, costs and profits relating to the performance of such contracts. If it appears from the reports filed that excessive profits may have been earned, the Board is authorized to enter into renegotiation proceedings to the end that an agreement may be reached with the contractor or sub-contractor with respect to the elimination of excess profits. If no agreement is reached, the Board may en-ter its own order determining the amount of excess profits. If this is done, a contractor may file a petition with the Court of Claims for a *de novo* proceeding to redetermine the amount of excess profits.

Under the Freedom of Information Act each agency must make available to the public certain documents and papers unless they are specifically exempt from disclosure under the Act.[3]

The Board's decisions to withhold information in the three categories are reviewed below.

### Category I

Under Section 552(a)(2) of the Freedom of Information Act, each agency must make available for public inspection and copying in accordance with published rules *inter alia*, "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases . . . . .". Pursuant to this section, plaintiffs seek disclosure, for the period of July 1, 1964 through June 30, 1969, of certain unilateral Orders, Statements of Determination and Renegotiation Agreements, which all, unquestionably, come within the category of final opinions.

A substantial number of these documents have been made available to the public. Over the five year period in suit, there are sixty-eight unilateral Orders of the Board, fifty-one of which were appealed to the Tax Court. Since the orders appealed were necessarily submitted, together with the petition, in the Tax Court, they became a part of the public court records. Similarly, six Statements of Determination in this period were prepared in cases which were appealed and hence became public court records.

■ The Board contends that Exemption 4 of the Act applies to the other seventeen unilateral Orders and to the one hundred fifty-three Renegotiation Agreements. Exemption 4 protects

3. Bristol-Myers v. Federal Trade Commission, 138 U.S.App.D.C. 22, 424 F.2d 935 (1970); Soucie v. David, 145 U.S.App. D.C. 144, 448 F.2d 1067 (1971).

from disclosure under the Act, "trade secrets and commercial or financial information obtained from a person and privileged or confidential". To preserve the interests of confidentiality, the Board struck identifying details before releasing the documents, with the exception of Exhibit A discussed *infra*. In Grumman Aircraft Engineering Corporation v. Renegotiation Board,[4] Exemption 4 was construed "to encompass only information received from persons outside the Government". The amount of excess profits is a determination made by the Board which applies its own accounting analysis to the information obtained from the contractors. The amount of excess profits is information from the Government and, therefore, not exempt. The Board must disclose completely the unilateral Orders.

■ Like the unilateral Orders, the Renegotiation Agreements reflect the Board's conclusion of the sum of excess profits and, in addition, include a timetable for the corporation to disgorge these profits. These, too, must be made public without deletions.

■ As to Exhibit A of the Agreement, the Board deleted the name, columns reflecting total sales, costs and profits, and non-renegotiable business. Exhibit A is attached to the Renegotiation Agreement and contains information taken directly from the corporation which is plainly "commercial or financial" profits and costs. In order to qualify for the exemption, information must be not only commercial or financial but also "privileged or confidential", Getman et al. v. National Labor Relations Board.[5] The *Grumman* court, *supra*, construed "confidential" to mean that "commercial or financial information which the contractor would not reveal to the public and therefore are ex-

empt from disclosure or are subject to release only after appropriate deletions have been made".[6] This language was quoted with approval by the Court of Appeals in the instant case, at p. 114 of 473 F.2d.

A bare claim of confidentiality is insufficient, M. A. Schapiro & Co. v. Securities & Exchange Commission.[7] However, sale statistics were specifically mentioned in both the Senate and House Reports on the Act as covered by Exemption 4, S. Rept. 1219, 88th Cong., 2d Sess. at 6, reiterated at S. Rept. 813, 89th Cong., 1st Sess. at 9; H. Rept. 1497, 89th Cong., 2d Sess. at 10. Moreover, in Sterling Drug, Inc. v. Federal Trade Commission,[8] the court held Exemption 4 applied to the documents involved because they contained business sales information. Sales statistics, including total net sales, total costs and expenses, and operating profits are the main substance of Exhibit A. All of the information withheld in Exhibit A is exempt from disclosure because any further disclosure of information on this Exhibit would jeopardize the interests of confidentiality since the Renegotiation Agreements, with the names of the contractors, must be disclosed.

### Category II

Pursuant to Section 552(a)(3) of the Act, which requires disclosure of "identifiable records", plaintiffs seek all Standard Forms of Contractor's Report for Renegotiation, Statements of Non-Applicability of the Renegotiation Act and Reports of Self-Exemption filed by eight named contractors over the same five year period. During that time only one Statement of Non-Applicability was submitted and no Report of Self-Exemption was filed.

The Board has refused to disclose any part of these filed forms, claiming Ex-

---

4. 138 U.S.App.D.C. 147, 425 F.2d 578 (1970).

5. 146 U.S.App.D.C. 209, 450 F.2d 670 (1971).

6. 138 U.S.App.D.C. at 151, 425 F.2d at 582.

7. 339 F.Supp. 467 (D.C., D.C., 1972).

8. 146 U.S.App.D.C. 237, 450 F.2d 698 (1971).

emption 4 applies. Also urging this position is the intervenor.

■ The same rationale which protects Schedule A from disclosure qualifies the Statement of Non-Applicability under Exemption 4 because it sets forth confidential financial information from the corporation, gross sales and renegotiable sales—the essential information of the form. Since Intervenor Chromalloy has identified itself in the memorandum it submitted in this case as the author of the sole Statement of Non-Applicability, disclosure of the financial data with the name deleted would be meaningless.

■ The Forms of Contractor's Report for Renegotiation disclose the complete financial situation of the corporation. The forms contain financial information from a person (the corporation) which the contractor would not reveal to the public and which is, therefore, confidential. The contractor's claim of confidentiality is reasonable because knowledge of production, overhead and operating costs, levels of profit, sales and pricing data, as well as other facts included in the Forms would greatly assist those companies in competition with the contractor. In addition, defense contractors would be put at a competitive disadvantage in purely commercial markets where they compete with contractors not required to disclose. Furthermore, public availability of the Standard Forms of Contractor's Report may reduce the number of contractors willing to compete for defense contracts, especially those primarily or even partially in commercial markets; these contractors would have to choose between not competing for a contract covered by the Renegotiation Act and filing forms publicly revealing confidential business information.

Deletion of the names from the forms would not provide adequate protection to the contractors because only eight corporations are involved and an interested party could easily piece together the information to identify the contractor. For these reasons, the Standard Forms and Statement of Non-Applicability are *in toto* exempt from disclosure.

## Category III

Also pursuant to Section 552(a)(3) of the Act, the plaintiffs seek as "identifiable records" the thirty-eight memoranda prepared in connection with some of the Renegotiation Agreements. These memoranda are summaries of discussions between representatives of the Board and the contractor. The Board withheld their disclosure, citing Exemptions 5 and 4.

Of the five memoranda submitted for *in camera* inspection, only one contained statements of opinion and a recommendation by the Board representative. Such statements clearly fall within the purview of Exemption 5 of the Act, which includes, "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency".[9] Recently, in Environmental Protection Agency v. Mink,[10] the Supreme Court explained the purpose of Exemption 5 and the manner in which it is to be applied:

" . . . the question was whether production of the contested document would be 'injurious to the consultative functions of government that the privilege of nondisclosure protects.' Kaiser Aluminum & Chemical Corp. v. United States, [157 F.Supp. 939, 946, 141 Ct.Cl. 38 (1958)]. Thus, in the absence of a claim that disclosure would jeopardize state secrets, see United States v. Reynolds, 345 U.S. 1, [73 S.Ct. 528, 97 L.Ed. 727] (1953), memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government."

9. 5 U.S.C. § 552(b)(5).

10. 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed. 119 (1973).

In this case, the statements exempt from disclosure found in one Board memorandum could easily be severed, leaving the factual information intact. Possibly that would be equally true of the remaining memoranda.

However, the factual matter can only be disclosed if it does not qualify for exemption, as the Court of Appeals indicated:

".  .  .  if these portions of the memoranda contain factual data which can be disentwined from the decision-making process, *and the factual data is not within some other exemption,* so much of the memoranda as is of a factual character should be disclosed". *Fisher, supra,* at p. 115 (emphasis added).

Here the factual data is that financial and commercial information provided by the contractor which the Board needed to know in order to fairly assess the profits. All information sought and obtained during these discussions is directly related to that determination. Generally it is a more detailed presentation of one or another aspect of the Contractor's Report for Renegotiation discussed *supra.* Furthermore, some of the more probing questions of Board representatives were answered by revealing trade secrets, e. g., high costs were justified by explanations of the intricacies of production or testing. The factual matter of these discussions is essentially that information specifically exempted as trade secrets or confidential financial or commercial information. Any attempt by this court to extricate non-exempt information would be uncertain at best and would not produce anything very meaningful. Hence, the memoranda are exempt from disclosure in their entirety.

### Conclusion

The Court finds, therefore, that the Freedom of Information Act compels complete disclosure of the seventeen unilateral Orders and the One Hundred and Fifty-three Renegotiation Agreements with the exception that the information withheld in Exhibit A, attached to these Agreements, is protected under Exemption 4. The Court further finds that Exemption 4 entirely protects from disclosure the Statement of Non-Applicability and the Forms of Contractor's Report for Renegotiation, as well as the factual information in the Board's thirty-eight memoranda. Since the statements of opinion in the memoranda are obviously covered by Exemption 5, the memoranda are exempt *in toto* under the Act.

Counsel for the defendant shall present an appropriate order consistent with this opinion.