Frank A. Traylor, M.D. Executive Director Colorado Department of Health 4210 E. 11th Avenue Denver, CO 80220
Dear Dr. Traylor:
This letter is in response to your request for advice as to whether the Colorado Department of Health is authorized to disclose information obtained from Colorado companies pursuant to a legislatively-mandated survey conducted by the department's Subcommittee on Hazardous Materials concerning industrial waste generation. In connection with your request, you have provided copies of letters from Mr. William G. Gagnon of the PuebloStar-Journal and Mr. Neil Westergaard of the Colorado Springs Sun requesting the Department of Health to release the survey results pursuant to the Colorado Public Records Act, C.R.S. 1973, 24-72-201 etseq.[1] (The text of all footnotes appears at the end of this letter.) The department has informed this office that it already has released certain of the information requested on the basis that such release did not raise questions concerning the application of the trade secret or confidential commercial data provisions of the Colorado Public Records Act. Accordingly, this letter is intended to provide the department with legal guidance regarding the extent to which any as-yet-undisclosed survey information must be made available for public inspection.
QUESTION PRESENTED AND CONCLUSION
The question presented is whether the Colorado Department of Health is authorized, pursuant to the provisions of C.R.S. 1973,24-72-201 et seq. (hereinafter Public Records Act), to permit inspection of documents containing information obtained from Colorado companies concerning industrial wastes, including information revealing the amounts and chemical composition of such wastes. To the extent that any portions of such documents are determined by the Department of Health to contain trade secrets or confidential commercial data, those portions may not be disclosed.
ANALYSIS
C.R.S. 1973, 24-72-204 provides in part as follows:
 (1) The custodian of any public records shall allow any person the right of inspection of such records or any portion thereof except on one or more of the following grounds or as provided in subsection (2) or (3) of this section:[2]
Subsection (3)(a) of the foregoing section provides in part that the custodian shall deny the right of inspection of the following records:
 (IV) Trade secrets, privileged information, and confidential commercial, financial, geological, or geophysical data furnished by or obtained from any person;
C.R.S. 1973, 24-72-202(6) (Supp. 1979) defines "public records" as follows:
 (6) "Public records" means and includes all writings made, maintained, or kept by the state or any agency, institution, or political subdivision thereof for use in the exercise of functions required or authorized by law or administrative rule or involving the receipt or expenditure of public funds. It does not include criminal justice records which are subject to the provisions of part 3 of this article.
C.R.S. 1973, 24-72-202(7) defines "writings" as follows:
 (7) "Writings" means and includes all books, papers, maps, photographs, cards, tapes, recordings, or other documentary materials, regardless of physical form or characteristics.
The information sought in this instance is contained in documentary materials kept by the Colorado Department of Health as a result of an industrial waste generation survey conducted pursuant to the provisions of C.R.S. 1973, 25-15-101 (Supp. 1979). Accordingly, the requested information is a public record as defined in the Public Records Act.
The overriding purpose of the Public Records Act is to permit inspection of writings maintained by state agencies in furtherance of their functions. Information contained in public records is presumed to be disclosable absent a clear basis for applying one of the statutory exceptions. Moreover, in this particular case there is a strong, legitimate public interest in obtaining information concerning the disposal of hazardous wastes in Colorado. Hence, although the Public Records Act was deliberately designed with disclosure exceptions for trade secret and confidential commercial data, to the extent that any of the information provided in the responses to the survey is not information which is legitimately exempt from disclosure under the case-by-case analysis discussed hereinafter, such information should be released forthwith.[3] In order to discharge its affirmative obligation to ascertain whether any of the information sought may not be disclosed, the department should seek all available evidence bearing upon the question. In addition, the department should determine whether the affected companies are willing to permit disclosure of the information sought. In this connection, the department has notified this office that it has commenced to gather such evidence by requesting affected companies, by a date certain, to provide information explaining the connection, if any, in individual cases between disclosure of any portion of the survey results and revelation of trade secret or confidential commercial data and also whether any affected company objects to disclosure of any portion of the survey results.
The Public Records Act does not define "trade secret" or "confidential commercial data," and Colorado courts have not interpreted these terms. However, similar terms exist in the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552,[4]
which provides for public inspection of certain records in the possession of federal agencies. The FOIA has been frequently litigated, and the federal cases interpreting these similar provisions are instructive.
Recent federal cases construe the term "trade secret" to mean "`. . . any formula, patent, device, plan or compilation of information which may be used in one's business and which gives a person an opportunity over his competitor.'" KodekeyElectronics, Inc. v. Mechanex Corporation, 486 F.2d 449
(10th Cir. 1973). See also, e.g.,Pressure Science, Inc. v. Kramer, 413 F. Supp. 618,625-6 (1976), aff'd, 551 F.2d 301 (2d Cir. 1976) (claim of misappropriation of trade secret); Chevron Chemical Co.v. Costle, 433 F. Supp. 1024, 1031-2 (N.D. Cal. 1978) (action to prohibit disclosure under confidentiality provisions of Federal Environmental Pesticide Control Act, 7 U.S.C. § 136H(b));Union Oil Co. of California v. Federal Power Commission,542 F.2d 1036 (9th Cir. 1976) (action under FOIA for protection of information concerning natural gas reserves).
These constructions are consistent with the dictionary definition of trade secret ("a formula, pattern, process, or devise that is used in one's business and that gives an advantage over competitors who do not know or use it," Webster's Third NewInternational Dictionary) and the definition of trade secret recognized under common law. See Restatement ofTorts, section 757, comment b (wherein the definition of trade secret specifically includes "a formula for a chemical compound, a process of manufacturing, treating or preserving materials.")
It is not necessary that the information sought itself be a trade secret in order to be exempt from disclosure. Denial of inspection is also required where "identifying details may be used to reconstruct confidential information in conjunction with information to be disclosed" or where a competitor could "deduce" or "extrapolate" confidential information from the data released.Fisher v. Renegotiation Board, 473 F.2d 109, 113 (D.C. Cir. 1972), (on remand, 355 F. Supp. 1171 (D.D.C. 1973));Westinghouse Electric Corporation v. Schlesinger,392 F. Supp. 1246 (E.D. Va. 1974), aff'd, 542 F.2d 1190
(4th Cir. 1976), cert. denied, 431 U.S. 924 (1977). Hence, the fact that certain of the data provided to the Colorado Department of Health in the waste generation survey does not directly reveal secret processes does not compel disclosure if trade secrets may be discovered by analysis of the information sought.
Whether release of certain waste generation data will result in disclosure of a secret process requires a technical, factual analysis on a case-by-case basis. American Airlines, Inc.v. Nat'l. Mediation Board, 453 F. Supp. 430, 434 (S.D.N Y 1978), rev'd on other grounds, 558 F.2d 863 (2d Cir. 1978). In addition to application of the foregoing definition of trade secret, the department's determination should include analysis of the following factors relevant to trade secret determinations:
1. The cost of developing the data;
 2. The value of the data to the owner and to competitors, i.e., the extent of the competitive advantage they provide;
 3. The extent to which the data are not independently known or available to others; and
 4. The extent to which the owner has maintained their confidentiality.
Chevron Chemical Co. v. Costle, supra, at 1031. The case-by-case analysis required for resolution of the disclosure issue must be done with respect to each item of information contained in each document sought to be inspected. If the department determines that certain items of information contained in any individual document are exempt from disclosure but other items are not, the department must devise a method to permit inspection of those parts which are available without revealing those parts which are not disclosable.
Mr. Orville Stoddard, senior public health engineer of the Hazardous Wastes Section of the Radiation and Hazardous Wastes Control Division of the Colorado Department of Health (who chaired the department's Subcommittee on Hazardous Materials at the time the subcommittee discussed the waste generation survey), has advised this office that the subcommittee decided to treat waste generation data as confidential because knowledge of chemical composition and amounts of wastes generated, together with a knowledge of the product produced, would in certain instances allow competitors to determine the process utilized in production.[5] Mr. Earl Robert White, the health and regulatory affairs chemist for Arapahoe Chemicals, Inc. of Boulder, Colorado, and member of the subcommittee, has confirmed to this office that the subcommittee's purpose in offering confidential treatment was in part to protect secret manufacturing processes because it is possible in certain cases (sometimes without much scientific sophistication) to determine the process by which a product is manufactured by analysis of the product(s) and the chemical composition and wastes generated in the manufacturing process.
This office has made no independent factual determination of the accuracy of these representations. However, such information is germane to the trade secret analysis, and, if the department determines that revelation of data concerning chemical composition and amounts of wastes generated would result in disclosure of a secret process by which an affected company manufactures its product, inspection of the records is prohibited by the trade secrets exemption of the Public Records Act.[6]
In the event that the department should determine that the information sought herein does not fall within the trade secret exemption of the Public Records Act, the department must consider whether such information is exempt from disclosure as "confidential commercial" data. C.R.S. 1973, 24-72-204(3)(a)(iv). Again, cases interpreting similar provisions of federal law are instructive.
With respect to whether information is commercial, one court has concluded that Congress intended the term "commercial" as used in the federal FOIA to be given its ordinary meaning. AmericanAirlines, Inc. v. Nat'l Mediation Board, supra, at 434. Another court, citing Webster's Third New International Dictionary, has noted that "commercial" is defined as "related to or dealing with commerce . . . having profit as the primary aim." Brockway v. Department of Air Force,370 F. Supp. 738, 740 (N.D. Iowa 1974), rev'd on other grounds,518 F.2d 1184 (8th Cir. 1975).
Application of the term requires a case-by-case analysis.American Airlines, Inc. v. Nat'l. Mediation Board,supra, at 434. In Brockway, supra, the court found that a manufacturer's report concerning the possible causes of an airplane crash was exempt from disclosure. With respect to the commerciality issue, the court stated:
 The Cessna Aircraft Company, being a private defense contractor, is unquestionably a commercial enterprise and the reports it generates must generally be considered commercial information which in many instances it may be unwilling to share with its competitors.
Brockway, supra, at 740-1 (footnotes and citations omitted).
Examples of other information which has been held to fall within the trade secret or confidential commercial exemptions of the FOIA include those portions of equal employment opportunity reports and an affirmative action program plan which contain information relating to processes, operations, and profit margins, Westinghouse Electric Corp. v. Schlesinger,supra, at 1250; of intrastate natural gas sales information, including names of customers, pressure base, sales volume and price terms, Continental Oil Company v.FPC, 519 F.2d 31 (5th Cir. 1975); and of test data showing pesticide is safe and effective when used as directed,Chevron Chemical Co. v. Costle, supra.
Much of the information contained in the documents sought to be inspected in this matter is data directly related to the operations of a business venture; indeed, insofar as chemical composition and amounts of waste generated are concerned, the data stem directly from examination of the byproduct of the manufacturing processes used by the affected companies. Hence, such data appear to meet the commerciality requirement of the Public Records Act. However, such information is exempt from disclosure only if it also is "confidential" within the meaning of the statute.
A test for determining whether information is confidential was set forth in National Parks and Conservation Association v.Morton, 498 F.2d 765, 770 (D.C. Cir. 1974) as follows:
 To summarize, commercial or financial matter is "confidential" for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.
(footnote omitted.) See also Continental Oil Co. v.FPC, supra, at 35.
This principle was also recognized in Brockway,supra, wherein the court observed:
 / In this case / it involves a report concerning Cessna's findings and opinions as to the possible causes of the accident in question, which report Cessna has submitted under assurances of confidentiality. If such information was not considered confidential, the Air Force would be hindered in obtaining valuable and necessary information relative to determining the causes of accidents and developing means for avoiding similar occurrences in the future.
Brockway, supra, at 740-1.
Mr. Stoddard has informed this office that the subcommittee determined that, unless it gave an assurance of confidential treatment, the department's ability to obtain the information necessary to comply with the legislatively mandated study would be substantially impaired because the affected companies feared the risk of disclosure of information which could harm their competitive position. If the department determines that such a risk in fact exists, disclosure of the information sought in this case might have both of the effects noted in National Parksand Conservation Association, supra. Again, the department must determine on a case-by-case basis, taking into consideration the factors discussed on page 5 with respect to trade secrets, whether in fact disclosure of the data sought would impede the ability of the department to obtain information necessary to carry out its statutory responsibilities or be likely to harm the competitive position of the person from whom the information was obtained.
C.R.S. 1973, 24-72-204(6) provides in pertinent part as follows:
 (6) If, in the opinion of the official custodian of any public record, disclosure of the contents of said record would do substantial injury to the public interest, notwithstanding the fact that said record might otherwise be available to public inspection, he may apply to the district court of the district in which such record is located for an order permitting him to restrict such disclosure. Hearing on such application shall be held at the earliest practical time. After hearing, the court may issue such an order upon a finding that disclosure would cause substantial injury to the public interest. In such action the burden of proof shall be upon the custodian. The person seeking permission to examine the record shall have notice of said hearing served upon him in the manner provided for service of process by the Colorado rules of civil procedure and shall have the right to appear and be heard.
Whether inspection of the information sought in this case is permissible involves in part a question of the ability of the department to obtain such information absent an assurance of confidentiality. Hence, the possibility of substantial injury to the public interest is raised since, without such information, the State of Colorado would be unable adequately to address problems of hazardous waste generation and disposal. Accordingly, if the department finds that any of the requested information would not fall within the trade secret or confidential commercial data exceptions to the Public Record Act but that disclosure of such information would do substantial injury to the public interest, the department may seek a judicial determination of the question. After the department has had an opportunity to consider the problem in accordance with the foregoing analysis, please feel free to consult with this office further if in any instance you desire to pursue the judicial remedy.
SUMMARY
Information contained in public records is presumed to be disclosable absent a clear basis for applying one of the statutory exceptions. Moreover, in this particular case there is a strong, legitimate public interest in obtaining information concerning the disposal of hazardous wastes in Colorado. However, to the extent that disclosure of any of the information sought in this matter would reveal a trade secret or confidential commercial or financial data, the Public Records Act requires the department to deny the right of inspection thereof. In order to make the foregoing determination, the department must, on a case-by-case basis, analyze the data provided by affected industries to determine whether the information sought contains trade secrets or confidential commercial data. If the department determines that any of such information does not contain such data, it should then consider whether disclosure of that information would cause substantial injury to the public interest. For example, if the department concludes that disclosure would impede the ability of the department to obtain information necessary to carry out its statutory responsibilities, then the department may apply to the district court for an order permitting the department to deny the right of inspection.
Very truly yours,
 J.D. MacFARLANE Attorney General
OPEN RECORDS
PRIVILEGED INFORMATION
PUBLIC INFORMATION
SOLID AND HAZARDOUS WASTES
5 U.S.C. § 552
C.R.S. 1973, 24-72-201 et seq.
C.R.S. 1973, 24-72-202
C.R.S. 1973, 24-72-204
HEALTH, DEPT. OF
Radiation Hazardous Waste
Documents obtained by the Department of Health concerning their generation of industrial wastes are public records subject to inspection except to the extent that any portions of such documents are determined by the Department of Health to contain trade secrets or confidential commercial data, which portions may not be disclosed.
[1] The letters request inspection under chapter 113, article 2 of the Colorado Revised Statutes, which is a reference to the 1963 compilation of the Public Records Act.
[2] Inspection of the instant records is not otherwise prohibited by state statute, federal statute or regulation, or court rule or order. See C.R.S. 1973, 24-72-204(1).
[3] C.R.S. 1973, 24-72-206 provides a criminal penalty for willful or knowing violation of the provisions of the Public Records Act. Hence, whether public records are available for inspection presents a significant issue, and the department may neither permit nor deny the right of inspection without a careful determination of the issue.
[4] Subsection (b) of the FOIA exempts from disclosure certain information, including "trade secrets and commercial or financial information obtained from a person and privileged or confidential."5 U.S.C. § 552(b)(4).
[5] Another basis upon which the subcommittee decided to offer confidential treatment — that Colorado industries would not provide the information necessary to the subcommittee's task absent an assurance of confidentiality — is discussed in more detail herein below.
[6] If the process is not in fact secret, however, a different conclusion would result. See Restatement of Torts, section 757, comment b ("Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret. Matters which are completely disclosed by the goods which one markets cannot be secret. Substantially, a trade secret is known only in the particular business in which it is used.")