Harold WEISBERG

v.

**U. S. DEPARTMENT OF JUSTICE, Appellant.**

No. 78–1641.

United States Court of Appeals, District of Columbia Circuit.

Argued June 6, 1979.

Decided June 5, 1980.

---

Michael Kimmel, Atty., Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Dept. of Justice, Earl J. Silbert, U. S. Atty. and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellant.

James H. Lesar, Washington, D. C., for appellee.

Before BAZELON, Senior Circuit Judge, TAMM, Circuit Judge and PARKER *, United States District Court Judge for the District of Columbia.

Opinion for the Court filed by Senior Circuit Judge BAZELON.

BAZELON, Senior Circuit Judge:

In this case a novel question is presented: whether administrative materials copyrighted by private parties are subject to the

disclosure provisions of the Freedom of Information Act (FOIA).[1] We hold that the mere existence of copyright, by itself, does not automatically render FOIA inapplicable to materials that are clearly agency records. However, because we find that the absence of the asserted copyright owner as a party to this action may subject the Government "to a substantial risk of incurring . . . inconsistent obligations,"[2] we remand for further proceedings as required by Rule 19 of the Federal Rules of Civil Procedure.[3]

## I. BACKGROUND

Appellee Harold Weisberg brought this FOIA action to compel disclosure of all photographs in the Government's possession that were taken at the scene of the assassination of Dr. Martin Luther King, Jr. Included in the FBI's possession are 107 photographs taken by Joseph Louw, then employed by *Life* Magazine.[4] Louw sold the photographs to TIME, Inc., the parent company of *Life* Magazine,[5] and TIME submitted copies of the photos to the FBI for use in the assassination investigation.

When the FBI advised TIME of Weisberg's FOIA request, TIME stated that it had no objection to having the photographs *viewed*, but that it would object if they were *copied* because such reproduction would violate its alleged copyright on the photos.[6] The FBI notified Weisberg accordingly, and advised him that he must obtain any copies of the photos directly from TIME since it owned the photos and had not granted the Bureau authority to

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. 5 U.S.C. § 552 (1976).

2. Fed.R.Civ.Pro. 19(a).

3. Fed.R.Civ.P. 19 (joinder of persons needed for just adjudication). *See notes* 33 & 44 *infra*; Fed.R.Civ.P. 21 (court may order addition of parties *sua sponte*).

4. Appellee contends on appeal that Mr. Louw was actually "on assignment" to Public Television when he took the photographs, using this as a ground for disputing TIME's claim of copyright ownership. Appellee's Br. at 31. Noth-

ing in the record, however, contradicts the basic fact of an employment relationship between TIME and Louw when the photographs were taken.

5. The precise nature of the agreement between TIME and Louw is unclear. Apparently TIME holds the copyright in trust for Louw, who reserved all book publication rights to the photographs. Appellants' Br. at 4.

6. Defendant's Exhibit No. 1, Joint Appendix at 50–51 (Letter of Sept. 13, 1977, from TIME, Inc. to Charles Matthews, FBI).

release copies. The FBI further claimed that FOIA Exemptions 3 [7] and 4 [8] applied to the photographs.

Thereafter, Weisberg learned from TIME that copies of the photos, without reproduction rights, would cost $10.00 per print. The cost for reproduction by the government under a FOIA request, according to Weisberg, would have been as little as forty cents per copy.[9] Motivated in part by this price differential, and in part by a belief that TIME was intentionally placing obstacles in his path,[10] Weisberg then pressed this FOIA claim to obtain copies of the photos from the FBI.

■ On cross-motions, the district court entered summary judgment for Weisberg and ordered the FBI to provide him with "prints" of the requested photos.[11] The court first held that the photos were "agency records" subject to disclosure under FOIA.[12] It then decided that neither of the FOIA exemptions asserted by the Government applied to the photos. The court concluded that the Copyright Act [13] is not a statute exempting disclosure for the purposes of Exemption 3,[14] and that even if it were, only three of the 107 requested photos "have been registered for statutory copyright protection." [15] The district court

7. 5 U.S.C. § 552(b)(3) (disclosure mandate not applicable to matter "specifically exempted from disclosure by statute").

8. 5 U.S.C. § 552(b)(4) (disclosure mandate not applicable to "commercial . . . information obtained from a person and privileged or confidential").

9. Appellee's Br. at 15. This was the fee charged by the FBI to reproduce various government photographs of the King assassination site. Appellant's Br. at 5 n.5.

10. Weisberg asserts that TIME's behavior during his attempts to obtain the photos directly from TIME demonstrated that TIME "would spare no effort to make obtaining the Louw pictures as expensive and time-consuming as possible." Appellee's Br. at 13.

11. Weisberg v. U. S. Dep't of Justice, Civ. Action No. 75–1996 (D.D.C. Feb. 9, 1978) [District Court Opinion].

12. District Court Opinion at 3–4. The district court cited three reasons for its conclusion: (1) the photographs relate to a "controversial matter[ ] of public concern," id. at 3; (2) Exemption 4 pertaining to commercial information "obtained from a person," 5 U.S.C. § 552(b)(4), shows that "Congress must have understood that the term 'record' would encompass material submitted to the agency by outsiders," id. at 4; and (3) agencies retain discretion to release materials even if they are found to quality for an exemption. Id. at 4.

13. 17 U.S.C. §§ 101–810 (1976).

14. District Court Opinion at 3–5. An Exemption 3 statute must either "(A) require[ ] that the matters [specifically exempted from disclosure] be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establish[ ] particular criteria for withholding or refer[ ] to particular types of matters

to be withheld." 5 U.S.C. § 552(b)(3). The district court held that the Copyright Act does not satisfy either of these requirements because it "has traditionally been subject to the equitable doctrine of 'fair use' and in 1976 the Law was amended to formally incorporate the doctrine." District Court Opinion at 5.

In ruling on the Exemption 3 issue, the court also made the following observation:

In addition, the Court notes that even if it had found the Freedom of Information Act's (b)(3) exemption to have been applicable, it would have exercised its discretion to make the photos available, given the substantial controversy surrounding both the assassination of Dr. King and the thoroughness of the government's investigation of the matter.

Id. at 6. The court did not cite any authority for the proposition that it retained discretion to order disclosure of the photos even if they came within a FOIA exemption. Although the Supreme Court in Chrysler Corp. v. Brown, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208, 1712–13 (1979), affirmed some agency discretion, the Court has not addressed whether reviewing courts may order disclosure of exempted materials. See GTE Sylvania, Inc. v. Consumers Union of the United States, Inc. ["GTE"], 445 U.S. 375, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980) (under FOIA, courts may order release of records only if "improperly withheld").

15. See District Court Opinion at 5. The district court apparently assumed that registration was a prerequisite for copyright protection under the 1909 Act in force when the photos were taken. We note that although copyright notice was required upon publication under the 1909 Act, see 17 U.S.C. § 10 (1970), registration apparently was not then, Washington Publishing Co. v. Pearson, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470 (1939), nor is it now, see 17 U.S.C. App. § 408(a) (1976), a precondition for statutory copyright.

further stated that even if all the photos were protected by statutory copyright, they would be subject to disclosure under the "fair use" doctrine because Weisberg intended to use them solely for scholarly purposes.[16] The court also determined the photos were not "confidential" or "privileged" by virtue of a copyright, and thus held the fourth exemption for commercial information inapplicable.[17] Although the parties and TIME were aware of TIME's interest in this litigation, they did not make any effort to bring TIME before the district court.

## II. COPYRIGHTED MATERIALS AS "AGENCY RECORDS"

The district court correctly recognized that the threshold issue in this case is whether the requested photographs are identifiable "agency records" subject to the disclosure provisions of FOIA.[18] The Government contends that because of TIME's copyright they are not,[19] and therefore urges dismissal.

■ The Government concedes, as it must, that generally materials obtained from private parties and in the possession of a federal agency may be agency "records" within the meaning of FOIA.[20] The Government argues, however, that if such materials are copyrighted by a private party[21] they should never be considered agency records because they constitute a "valuable work product."[22] For this sweeping proposition, we are directed to a Ninth Circuit case, *SDC Development Corp. v. Mathews*, 542 F.2d 1116 (9th Cir. 1976).

The plaintiff in *SDC* sought through FOIA to obtain copies of tapes containing computerized medical reference data compiled by the National Library of Medicine (Library). The statute establishing the Library[23] authorized it to charge the public for using such services and materials.[24] The established charge for the requested copies was $50,000. In an attempt to avoid this expense, the plaintiff submitted a FOIA request, tendering a $500 check to cover the direct cost of search and duplica-

16. District Court Opinion at 5–6. *See* 17 U.S.C.App. § 107 (fair use provision). In support of its holding, the district court stated: "In light of plaintiff's pledge to use the pictures for scholarly work and not for publication, the effect of the use 'upon the potential market for or value of the copyrighted work' will not be substantial. 17 U.S.C. § 107(4)." District Court Opinion at 6. The court did not address separately whether the *Government*, by making copies of the photos in response to Weisberg's (and other citizens') requests, would itself be able to assert a "fair use" defense in subsequent copyright infringement actions. This question is raised by appellants. *See* Appellants' Br. at 10.

17. District Court Opinion at 6–7. The court recognized that privileges under Exemption 4 may serve to protect the Government's ability to obtain necessary information in the future. But the court reasoned that an Exemption 4 privilege would serve no useful purpose in this case because most of the photos were unprotected by statutory copyright, and were subject, in any event, to disclosure under the fair use doctrine. *Id.* at 7.

18. 5 U.S.C. § 552(a)(3) (1976). *See Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 978, 63 L.Ed.2d 293 (1980).

19. Thus, the Government challenges the district court's finding that 104 of the 107 photos are not protected by statutory copyright. Appellant's Br. at 27–29.

20. Appellant's Br. at 19. *See, e. g., Forsham v. Harris, supra,* 445 U.S. at 183–187, 100 S.Ct. at 986–88; *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 1713, 60 L.Ed.2d 208 (1979). The Government further concedes that if the photos sought in this case were not subject to a valid copyright, "the agency would be obliged to treat them as agency records." Appellant's Br. at 23 n.20.

21. The Government acknowledges that a different case would be presented where the government owns the copyright. *See* Appellant's Br. at 7 n.6.

22. Appellant's Br. at 17. The district court apparently misunderstood the Government's position to be that *any* material submitted to an agency by a third party—including noncopyrighted material—falls outside the scope of "agency records." *See* note 12 *supra*.

23. National Library of Medicine Act, 42 U.S.C. §§ 275 to 280a–1 (1976).

24. *Id.* § 276(c)(2).

tion.[25] The Ninth Circuit, affirming a grant of summary judgment for the Government, held FOIA unavailable in these circumstances because the tapes were not "agency records." *See* 542 F.2d at 1119–21. In seeking to reconcile FOIA with the National Library of Medicine Act, the court focused on the *type* of material at issue:

> There is, then, a qualitative difference between the types of records Congress sought to make available to the public by passing the Freedom of Information Act and the library reference system sought to be obtained here. The library material does not directly reflect the structure, operation, or decision-making functions of the agency, and where, as here, the materials are readily disseminated to the public by the agency, the danger of agency secrecy which Congress sought to alleviate is not a consideration.

*Id.* at 1120.

■ The present case is readily distinguishable. Here the requested materials plainly "reflect the . . . operation, or decision-making functions of the agency," [26] because they will permit evaluation of the FBI's performance in investigating the King assassination. Further, absent a FOIA request, there is no guarantee that

the photos would be disclosed.[27] Indeed, interpreting FOIA as the Government urges would allow an agency "to mask its processes or functions from public scrutiny" [28] simply by asserting a third party's copyright.[29] This sharply contrasts with *SDC* where dissemination of the medical reference data was assured by separate congressional mandate. Because FOIA was designed to provide public access to materials such as the photos requested here,[30] we agree with the district court that the photos are "agency records" within the meaning of FOIA.

## III. PARTICIPATION BY THE ALLEGED COPYRIGHT HOLDER

■ Deciding that copyrighted materials are subject to FOIA, however, does not resolve whether any particular FOIA request should be granted, and if so, under what terms. The Government argues that copyrighted materials should *never* be subject to mandatory disclosure because of the effect of FOIA Exemptions 3 and 4. Even if neither exemption is applicable to copyrighted materials, the Government contends further that it can fulfill its responsibility under FOIA simply by making copyrighted materials available for inspection, rather than providing copies on request.[31] In op-

---

**25.** *See* 5 U.S.C. § 552(a)(4)(A) (1976) (FOIA fees "shall be limited to reasonable standard charges for document search and duplication and provide for recovery of only the direct costs of such search and duplication").

**26.** *SDC Development Corp. v. Mathews, supra*, 542 F.2d at 1120.

**27.** Copyright holders are under no obligation to grant access to their works, even if they have previously made copies available to the Government or to other parties. *See* 17 U.S.C. App. §§ 102, 401(a) (1976).

**28.** *SDC Development Corp. v. Mathews, supra*, 542 F.2d at 1120.

**29.** If the materials are not "agency records," the FBI may be able to deny requests for *access* as well as reproduction. *See, e. g., Forsham v. Harris, supra*, 445 U.S. 169, 100 S.Ct. 978, 63 L.Ed.2d 293 (because data compiled by private group receiving federal aid held not to constitute "agency record," no access afforded).

**30.** *See Forsham v. Harris, supra*, where the Court looked to the following provision of the Records Disposal Act in defining FOIA's phrase "agency records":

> "records" includes *all* books, papers, maps, *photographs*, or other documentary materials regardless of physical form of characteristics, made or *received by an agency of the United States Government* under Federal law or *in connection with the transaction of public business* . . . . 44 U.S.C. § 3301.

quoted at, 445 U.S. at 183, 100 S.Ct. at 986 (emphasis added).

**31.** The Government emphasizes that the FOIA disclosure provision at issue merely requires agencies to make their general records "available," it does not expressly mandate duplication of the records. *See* 5 U.S.C. § 552(a)(3). *Compare* 5 U.S.C. § 552(a)(2) (requiring each agency to "make available for public inspection and *copying*" final opinions, statements of policy and other specified agency materials) (emphasis added). The Government acknowledges, however, that in specifying applicable charges

position, appellee Weisberg argues, and the district court agreed, that FOIA requires the Government to furnish members of the public with copies of copyrighted materials on the same terms as any other "agency records." [32]

We intimate no view with respect to these contentions concerning the proper relationship between FOIA and the copyright laws. We conclude instead that the district court should have sought the presence of the alleged copyright holder under Rule 19 before deciding this case. Because TIME was not a party, the district court has subjected the Government "to a substantial risk of incurring . . . inconsistent obligations." Fed.R.Civ.P. 19(a).[33]

The district court's rulings vitally affect the value of TIME's alleged copyright.[34] If TIME were to bring its own action challenging the Government's right to duplicate the photos,[35] the district court's determination would not necessarily serve as a bar. Non-parties generally can be bound by prior judgments only where they have been fairly represented by one of the parties in the earlier litigation.[36] And an agency's interest in FOIA suits is likely to diverge from those of private parties.[37] Indeed, the Government concedes in this case that it had no incentive to protect TIME's interests on at least one of the key copyright issues decided by the district court.[38] The possibility therefore remains that a separate ac-

---

for fulfilling FOIA requests, the Act would seem to presume that records must be duplicated on request. See 5 U.S.C. § 552(a)(4)(A):

In order to carry out the provisions of this section each agency shall promulgate regulations . . . specifying a uniform schedule of fees . . . .. Such fees shall be limited to reasonable standard charges for document search and *duplication* and provide for recovery of only the direct costs of such and duplication. . . . [Emphasis added.]

The Government nevertheless proposes that under a "rule of reason," these provisions should be read *in pari materia* so as to permit agencies to disclose, but not duplicate, copyrighted materials. Appellant's Br. at 43–45. We do not reach this issue.

**32.** It should be noted, however, that the district court was influenced by the public importance of the photos requested in this case, as well as the alleged applicability of the fair use doctrine to Weisberg's intended use of the photos. *See* notes 12 & 16 *supra*.

**33.** In full, Rule 19(a) provides:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence completed relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may

be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

**34.** *See* at pages 826–827, *supra*.

**35.** By its literal terms, the Copyright Act gives a copyright holder the "exclusive" right to reproduce or authorize reproduction of the copyrighted work. 17 U.S.C.App. § 106(1) (1976). In actions for infringement, the courts are afforded a broad range of remedies, including: the imposition of statutory or actual damages, 17 U.S.C.App. § 504; impoundment or destruction of "all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights," 17 U.S.C.App. § 503; and injunctive relief "operative throughout the United States," 17 U.S.C.App. § 502. We, of course, express no view as to whether any of these remedies would be available in an infringement action following court-ordered disclosure.

**36.** *See generally* F. James & G. Hazard, Civil Procedure 575–589 (1977).

**37.** Even an agency's self-interest may be unclear in a given case, since it often faces the conflicting pressures of disclosure to foster appearances of "openness," *see, e. g.,* Note, *Protection from Government Disclosure—The Reverse FOIA Suit*, 1976 Duke L.J. 330, 359, and of nondisclosure to protect itself from embarrassment or to further its institutional objectives, *see, e. g.,* H.R.Rep.No. 1497, 89th Cong., 2d Sess. 5–6 (1966), *reprinted in* [1966] U.S. Cong. & Admin.News, pp. 2418, 2422–23.

**38.** The Government states that unless a copyright holder participates in litigation addressing

tion by TIME would be allowed to proceed, raising the prospect of conflicting legal obligations for the Government with respect to the disposition of TIME's photos.[39]

We recognize that neither the parties nor TIME chose to invoke the procedures available to include TIME in the litigation. But under the Federal Rules, the district court has an independent responsibility to assure

the just and final resolution of civil disputes.[40] Had TIME participated in the proceedings below—whether by intervention,[41] joinder as a party,[42] or interpleader [43]—the rights and liabilities of all interested persons would have been finally and consistently determined in one forum. As matters now stand, we are faced with the needless potential for duplicative litigation.

---

the issue of fair use of his copyright, "the only entity with any direct personal interest in showing that reproduction would *not* be a fair use would not be present in the lawsuit. The government has no real or direct interest in that issue. . . ." Appellant's Br. at 35. As noted before, *see* note 16 *supra*, the district court's judgment in this case depended largely on its determination that Weisberg's intended use of TIME's photos fell within the fair use exception.

joinder of interested parties when there otherwise would be a "substantial risk" of exposing one of the litigants to inconsistent obligations. *See* Fed.R.Civ.Pro. 19(a); *Pegues v. Miss. State Employment Serv.*, 57 F.R.D. 102 (N.D.Miss. 1972); *Hodgson v. School Bd., New Kensington-Arnold School Dist.*, 56 F.R.D. 393 (W.D. Penn.1972). We find that risk was present here for the government. The district court therefore should have sought to join TIME—the purported copyright owner—before disposing of the case on the merits.

**39.** This prospect is not eliminated by the Supreme Court's decision in *GTE, supra* note 14. In *GTE*, the Court reversed this court's decision permitting a FOIA action to proceed despite a prior nondisclosure order by the District Court of Delaware under the Consumer Product Safety Act. 100 S.Ct. at 1202, *reversing Consumers Union of the United States v. Consumer Product Safety Comm'n*, 590 F.2d 1209 (D.C.Cir. 1978). The Court relied on the fact that FOIA authorizes judicially-mandated disclosure of agency records only where those records are "wrongly withheld." *See* 5 U.S.C. § 552(a)(4)(B). The Court ruled that when an agency refuses to disclose its records pursuant to a valid prior court order, the agency records are not "wrongly withheld" and thus courts lack power under FOIA to compel disclosure. Because the Delaware order preceded this court's ruling, the Court ordered the FOIA action in this circuit to be dismissed.

Unlike GTE, the instant case presents the possibility of an initial disclosure order under FOIA, followed by a later suit brought under a separate statute—such as the Copyright Act—to reverse or remedy that initial order. The Court's interpretation of the phrase "improperly withheld" in FOIA therefore does not resolve whether such subsequent actions will be permissible. Especially where, as here, an initial ruling does not merely address the relationship between FOIA and the statute underlying the second action, but actually invalidates or limits the scope of an interested party's copyright, equitable considerations might favor granting the purported copyright holder its day in court.

We need not decide this question today, however. Under Rule 19, a trial court should seek

**40.** As we have said before with specific reference to Rule 19, "the rule puts the burden on existing parties *and the court* to bring in those whose presence is necessary or desirable, and to work out a fair solution when joinder is jurisdictionally impossible." *Consumers Union of the United States v. Consumer Product Safety Comm'n, supra*, 590 F.2d at 1223 (emphasis added), *rev'd on other grounds sub nom. GTE, supra*, 100 S.Ct. 1202. *See* Advisory Committee's Note to Fed.R.Civ.P. 19, *reprinted in* 39 F.R.D. 89, 92 (1966). *See also* Fed.R.Civ.P. 1 (The Federal Rules "shall be construed to serve the just, speedy, and inexpensive determination of every action."); Fed.R.Civ.P. 21 ("Parties may be dropped or added by order of the court on . . . its own initiative at any stage of the action and on such terms as are just."). *Cf. Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968) (court of appeals should take steps "on its own initiative" to fulfill Rule 19 policies).

**41.** Fed.R.Civ.P. 24; *see Fisher v. Renegotiation Bd.*, 355 F.Supp. 1171, 1173 (D.D.C.1973) (reverse-FOIA advocate permitted to intervene as of right in FOIA action).

**42.** Fed.R.Civ.P. 19.

**43.** Fed.R.Civ.P. 22.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's determination that copyrighted materials may constitute agency records under FOIA, and vacate the remainder of the district court's judgment. The case is remanded for the district court to seek joinder of TIME, which claims copyright protection, under Federal Rule of Civil Procedure 19(a). If joinder should prove infeasible, the district court must make the necessary determinations under Rule 19(b) to decide upon the future course of this litigation.[44] Consistent with our decision and disposition, we intimate no view with respect to the other issues presented on appeal.

*It is so ordered.*

---

**44.** Rule 19(b) provides:

If a person as described in [19(a)] cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

We expressly do not determine at this stage what actions these factors might dictate should TIME's joinder prove infeasible.